[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 18, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14065
Non-Argument Calendar

_____

Agency Docket No. A74-398-746

EARLYS LENIN GUIDO-RUIZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of
the Board of Immigration Appeals

_____

**(April 18, 2005)**

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Earlys Lenin Guido-Ruiz, a native of Nicaragua, petitions this Court for

review of the final order of the Board of Immigration Appeals (BIA), which

affirmed the order of removal by the Immigration Judge (IJ). The transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), govern his petition for review. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1276 (11th Cir. 2001). We deny the petition.

## I. STANDARD OF REVIEW

Because the BIA adopted the decision of the IJ without opinion, we review the analysis of the IJ as if it were the analysis of the BIA. See id. at 1284. We review factual determinations, including the existence of past persecution and a well-founded fear of persecution, under the substantial evidence test, and we "must affirm the . . . decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. 257 3d at 1283-84 (citation omitted). Under this highly deferential standard, we must defer to the decision . . . unless the evidence "compels" a reasonable factfinder to find otherwise. INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 815 n.1 (1992).

## II. DISCUSSION

Guido-Ruiz makes three arguments on appeal. He first argues that the IJ erred in denying asylum and withholding of removal because Guido-Ruiz

presented evidence of past persecution and the change of conditions in Nicaragua does not rebut this evidence. Guido-Ruiz next argues that the IJ denied him due process. Finally, Guido-Ruiz argues that the IJ should have stayed the removal proceedings pending a determination of whether Guido-Ruiz was entitled to relief under the Nicaraguan Adjustment and Central American Relief Act (NACARA). We address each argument in turn.

### A. Asylum and Withholding of Removal

An alien who arrives in or is present in the United States may apply for asylum. INA § 208 (a)(1), 8 U.S.C. § 1158 (a)(1). The Attorney General has discretion to grant asylum if the alien meets the statutory definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The asylum applicant carries the burden of proving statutory "refugee" status. Al Najjar, 257 F.3d at 1284. If the applicant meets this burden, then the AG may exercise his discretion to grant the applicant asylum. Id.

To establish asylum eligibility, an alien must, with specific and credible evidence, establish either (1) past persecution on account of his political opinion or other statutorily listed factor or (2) a "well-founded" fear of future persecution in account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. If an

3

alien offers credible testimony of past persecution in a protected ground, he is presumed to have a well-founded fear of future persecution, see 8 C.F.R. § 208.13(b)(1); D-Muhumed v. United States Attorney Gen., 388 F.3d 814, 818 (11th Cir. 2004), but "an immigration judge . . . shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if . . . [t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." 8 C.F.R. § 208.13(b)(1)(i).

Substantial evidence supports the finding of the IJ that Guido-Ruiz did not have a well-founded fear that his political opinion will cause future persecution. Guido-Ruiz suffered relatively minor harassment. Although the IJ found that his "father was subjected to what appears to be a very harsh period of detention for four months" because of his father's "expression of displeasure with the Sandinista government," Guido-Ruiz remained in Nicaragua for eight or nine years after the Sandinista revolution. Guido-Ruiz was never arrested and did not suffer any harm during this period of time. Although Guido-Ruiz testified that members of the Sandinista youth committee would sometimes beat him, the record does not contain any evidence that Guido-Ruiz was ever physically injured because his testimony was not specific as to the nature or extent of the beatings.

4

Additionally, members of Guido-Ruiz's family continue to live in Nicaragua without persecution from the Sandinistas.

Since Guido-Ruiz's departure from Nicaragua, a democratic government has been firmly established. The Country Report noted extensive changes in Nicaragua since 1990. Nicaragua is a constitutional democracy with a popularly-elected president, vice president, and legislature. Guido-Ruiz, therefore, failed to show that he possessed a "well-founded fear" of persecution on account of any protected ground.

Guido-Ruiz also failed to establish that he was entitled to withholding of removal under the INA, which allows for withholding of removal if an alien can show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. See INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A). An alien seeking withholding of removal must establish that he would "more likely than not" be persecuted on account of one of the protected grounds" if he were to return to the country. See INS v. Stevic, 467 U.S. 407, 429-30, 104 S. Ct. 2489, 2501 (1984). This standard is a more stringent than the standard for asylum. See Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1324 n.2 (11th Cir. 2001).

If "an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of removal." Al Najjar, 257 F.3d at 1292-93 (internal citations omitted). Because Guido-Ruiz failed to meet the lower standard of eligibility for asylum, substantial evidence supports the denial by the BIA of withholding of removal. We conclude that Guido-Ruiz failed to meet his burden to show that it was more likely than not that his life or freedom would be threatened on account of any protected ground.

Finally, Guido-Ruiz failed to demonstrate that he was eligible for withholding of removal under the United Nations Convention Against Torture (CAT). To establish withholding of removal under the CAT, an applicant must establish that it is "more likely than not" he will be tortured in the country of removal. 8 C.F.R. § 208.16(c)(2).

Guido-Ruiz did not prove that he was ever tortured, much less that he "more likely than not" would be tortured upon his return to Nicaragua. Guido-Ruiz also did not present any evidence that the alleged harm he suffered was "inflicted at the instigation of or with the consent or acquiescence of a public official." 8 C.F.R. § 208.18(a)(1). Guido-Ruiz, therefore, failed to establish eligibility for CAT relief.

## B. Due Process

Guido-Ruiz argues that the IJ denied him due process when the IJ asked Guido-Ruiz's father to explain why Guido-Ruiz's middle name was Lenin. We review a due process claim de novo. See Alabama Power Co. v. FCC, 311 F.3d 1357, 1367 (11th Cir. 2002). "To establish due process violations in removal proceedings, aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial prejudice." Lonyem v. U.S. Attorney Gen., 352 F.3d 1338, 1341-42 (11th Cir. 2003) (citation omitted).

In response to testimony by Guido-Ruiz's father, Maximo, that he was totally unaware of the nature of the Sandinista government, the IJ asked Maximo about his choice of the middle name Lenin for his son. Maximo stated that he just liked the name, and he did not see any significance in the name. This response spoke to Maximo's credibility because Guido-Ruiz was born three months after the Sandinistas, a Marxist organization, came to power. Moreover, Guido-Ruiz has not demonstrated that this isolated, short line of questioning interfered with his ability to present his case. Accordingly, Guido-Ruiz has not established that the questioning by the IJ violated due process.

## C. NACARA

Guido-Ruiz argues that the IJ should have stayed the removal proceedings pending a determination of whether he was entitled to relief under NACARA. We review legal determinations of the BIA or IJ de novo. See D-Muhumed, 388 F.3d at 817. An alien is eligible to apply for adjustment of status under the NACARA if he (1) is a national of Nicaragua or Cuba, and (2) has been present in the United States for a continuing period beginning no later than December 1, 1995, and ending no earlier than the date the adjustment application is granted. See NACARA §§ 202(a)(1), (b)(1) Children of Nicaraguan aliens can obtain permanent resident status under the NACARA if they meet certain requirements. See NACARA § 202(d). A child is "an unmarried person under twenty-one years of age who is . . . a child born in wedlock." INA § 101(b)(1)(A), 8 U.S.C. § 1101(b)(1)(A).

Guido-Ruiz is not eligible to apply for relief under the NACARA on his own because he entered the country in October 1996. He, therefore, can obtain relief only as a beneficiary of his mother's application. Because Guido-Ruiz reached the age of 21 before his mother's application was processed, he does not qualify as a "child" under the NACARA. Although Guido-Ruiz argues that we should consider other immigration provisions that consider the age of the

8

applicant at the time the petition was filed, none of those provisions amend or expand the age provision of the NACARA. The IJ did not err in concluding that Guido-Ruiz was not eligible for adjustment under the NACARA.

## III.  CONCLUSION

Based on the foregoing, we deny Guido-Ruiz's petition for review.

**PETITION DENIED.**