[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 26, 2006
THOMAS K. KAHN
CLERK

No. 05-13913
Non-Argument Calendar

_____

BIA No. A78-960-080

ALFRED FASHO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 26, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Alfred Fasho petitions for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ's") determination denying him asylum and withholding of removal under the Immigration and Nationality Act ("INA") and protection under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition.

## I. BACKGROUND

Fasho, a native and citizen of Albania, entered the United States on June 12, 2002 at the Texas border without being properly admitted or paroled. On June 19, 2002, the government issued a Notice to Appear charging Fasho with inadmissibility. See INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). Fasho applied for asylum, withholding of removal and CAT relief, claiming that he was mistreated by the Albanian government due to his and his father's involvement with the Democratic Party of Albania ("DPA").

### A. Asylum Application

According to Fasho's application affidavit, his family had long been recognized in his region of Albania as a leading anti-communist family. Fasho's grandfather was executed by the communist regime. His family was sent to labor camps after their property was confiscated and was under constant surveillance after their release. Fasho's parents were members of the DPA beginning in the

early 1990s, participated in peaceful demonstrations and campaigned for a DPA

candidate in the 1992 elections, which resulted in their being beaten and arrested.

The DPA won the 1992 elections by a landslide, and the Socialist Party

resigned. In 1997, the Socialist Party returned to power by means of violence and

voting manipulation. In 1997, Fasho's father was beaten unconscious by two

masked men in retaliation for his DPA support. These men threatened to kidnap

and kill Fasho and rape his mother. Two days later, Fasho, who was 14 years old,

was abducted and beaten. The men placed a knife to Fasho's throat and told him to

tell his father that the group known as "The Revenge" had almost killed him.

In December 1998, Fasho became a youth member of the DPA and a regular

member in December 2001. In December 1998, Fasho led demonstrators from his

village in support of hunger-striking political prisoners and to denounce the

Socialist Party government. As a result, Fasho was detained for two days and

beaten by the secret police, called the SHIK. Fasho was elected the vice-chairman

of the Youth Forum of the Democratic Party in his village, making him responsible

for recruiting new members, scheduling meetings and coordinating activities with

the regional branch. Fasho participated in anti-communist rallies and peaceful

demonstrations in opposition to the Socialist Party's manipulation of the October

2000 elections. Fasho was detained, interrogated and beaten by the SHIK in June

1999, and September and November 2000. On March 22, 2001, Fasho was

3

attacked after participating in a peaceful DPA gathering and hospitalized for two days. The masked attackers did not identify themselves, but threatened to kill Fasho if he continued to participate in DPA activities.

On June 24, 2001, during the general elections, Fasho was assigned by the DPA to the electoral commission in his village. Fasho observed voting irregularities and vowed to report them. That night, shots were fired at Fasho's house, and an explosion caused his roof to collapse partially, injuring him. Fasho did not report the incident because be believed the government was involved. The next day, the DPA agreed to help Fasho leave Albania. Fasho hid for several months in an Albanian border town. Fasho left Albania on April 3, 2002, entering the United States illegally on June 12, 2002 (almost one year after the shooting at his house).

Fasho attached this documentation: (1) a copy of his DPA membership card; (2) the DPA chairperson's statement attesting to Fasho's DPA membership and involvement; (3) a copy of Fasho's Association of Formerly Politically Persecuted ("AFPP") membership card; (4) the AFPP chairperson's statement attesting to Fasho's membership; (5) a neighbor's statement attesting to the bombing of Fasho's house.

4

**B.      Country Conditions**

The government submitted the State Department 2002 Country Report for Albania ("Country Report"), which stated that Albania is a republic with a multi-party parliament, a prime minister and a president. The Socialist Party won the majority of the parliamentary seats in the 2001 general elections, which were "conducted in a peaceful atmosphere." The Organization for Security and Cooperation in Europe ("OSCE") judged the elections to have improved over past elections, but noted serious voting irregularities. The Albanian government has a poor human rights record, including local police beating suspects, detainees and prisoners and making arbitrary arrests and detentions. However, there were no confirmed cases of detainees being held strictly for political reasons or political killings by the government or its agents and no reports of politically motivated disappearances or political prisoners. Human rights groups were generally able to operate in Albania and the most commonly reported violations were "citizen complaints of police and military abuse of power, lack of enforcement of court judgments in civil cases, wrongful dismissal, and land disputes . . . ." Albania continued to experience high levels of violent crime, due in large part to "blood feuds" between vigilante clans or criminal gang conflicts.

The government also submitted the 2001 Profile of Asylum Claims and Country Conditions for Albania from the United States Department of State

5

Bureau of Democracy, Human Rights and Labor ("Asylum Profile"), which stated that Albania is the poorest and least developed country in southeastern Europe. After the communist regime began to disintegrate in 1990, there was a mass exodus of Albanians seeking a better life abroad. After the 1997 collapse of various "pyramid" schemes that cost Albanians their life savings and led to potential anarchy, the major political parties agreed to form a government of national reconciliation and slowly brought about sufficient public order for early national elections. The 1997 elections repudiated the previous, increasingly autocratic rule of the former president and his DPA in favor of the Socialist Party, which remained in power as of 2001.

Most applicants claiming asylum based on political opinion alleged mistreatment of themselves and/or their families during the communist reign of 1945 to 1990. The Asylum Profile rejected claims that the current government is led by a reconstituted Communist Party engaging in political persecution, as follows:

> With the Socialist Party currently leading a coalition government, it is highly unlikely in today's circumstances that many applicants will have credible claims to political persecution. Such claims are generally amplified by the assertion that a reconstituted communist regime has come to power. Claims relying on this premise are contradicted by virtually all state actions, and those who truly were persecuted by the communists often resent the comparison. Both major parties trace their roots to the communist regime and both repudiate it thoroughly. . . . There is virtually no evidence that

6

individuals are targeted for mistreatment on political grounds. Far more prevalent is organized and amateur crime, exacerbated by the widespread availability of firearms, high unemployment and poverty, continued corruption among the police and a culture of blood feud that is wholly independent of political activity.

The DPA participated in most parliamentary activity and the 2001 elections made clear the progress toward meeting democratic standards. There was no post-communist tradition of retribution against political leaders. Albania's National Intelligence Service, SHIK or the secret police, have internal and external functions, and a public perception existed following the 1996 parliamentary elections that SHIK was firmly under the DPA's control and that the DPA was using it for their own ends. Many Albanian applicants enter the United States without inspection and present spurious, fraudulent or no documents. Applicants often cited current membership in the non-profit Association of Former Politically Persecuted Persons formed after the 1992 elections, although documents apparently provided by it could not be authenticated.

Fasho submitted the United Kingdom's Home Office April 2003 Albania Assessment, which stated that the 2001 parliamentary elections occurred in four rounds due to accusations of electoral fraud. The elections were peaceful, and, unlike previous elections, political parties sought legal redress for their grievances.

## C. Asylum Hearing Testimony

At his hearing, Fasho conceded removability and testified about his treatment in Albania. Among other things, Fasho testified that he was 14 years old in 1997 when he and his father were beaten by the secret police. However, Fasho later testified that, in 1998, when he was 17 years old, he was again abducted and beaten by the secret police while attending a strike demonstration. On cross-examination, Fasho confirmed that he was 14 years old in 1997 and that in 1998 during the strike demonstration he was 17 years old. When asked, "How is it you went from 14 to 17 in one year?," he responded, "I'm sorry; I just, I just misinterpreted. I don't even know how I said that but –." Fasho also stated that, although he had been hospitalized after some of the beatings he received, he had yet to obtain any hospital records. When questioned by the IJ, Fasho was unable to remember the year he left Albania. Fasho further testified that he did not have a specific occupation in Albania, but that he worked in "my agricultural estate around my house" and for the DPA.

Fasho also testified that the Communist Party won the 1997 elections. Upon cross-examination, Fasho stated that the two main political parties currently in Albania were the Communist and Democratic parties and that the Communist Party was in control. He also stated that the Communist Party and the Socialist Party were the same party. Moreover, when asked to explain the system of

8

governance in Albania, Fasho responded that the current ruling party was the same as the communist government rule and then stated that he did not know. Although Fasho continued to insist that he was a political activist and election observer, Fasho was unable to explain how members of the Albanian parliament were elected and stated that his "problems were due to [his] father's participation and [he] did as much as [he] could, but [was] not able to explain all this today." Fasho was unfamiliar with the OSCE, the primary European body for election governance. Fasho stated that just one election was held on June 24, 2001 and was unaware of the four other rounds of voting in the summer of 2001 required to complete the election. Fasho acknowledged that he had previously testified that the secret police attacked his father on June 29, 1997, but now was testifying that members of the Socialist Party attacked his father.

In authenticating his membership documents, Fasho explained that he had sent pictures to his brother in Albania, who put them on documents issued under Fasho's name and returned them to Fasho. Fasho also explained that one of the documents was a testimonial by his cousins, who witnessed Fasho's mistreatment. When asked if his cousin was the author, Fasho responded, "No, that's not my cousin, my neighbor." When questioned further if the testimony was by relatives given the surname Fasho on the declaration, Fasho responded, "They are not relatives because in the village where I reside, three quarters of the population has

9

the last name Fasho." Fasho's testimony then vacillated between identifying the witnesses as "far away cousins," and neighbors who were not cousins.

**D.     Decisions of the IJ and BIA**

In his oral decision, the IJ found that Fasho's testimony was not credible and "obviously fabricated," and that Fasho's asylum claim was frivolous.

The IJ supported his adverse credibility assessment by finding that Fasho: (1) was unable to determine the date he purportedly entered the United States; (2) had no employment in Albania, other than his work with the DPA; (3) was unable to recall when elections occurred or what happened during the elections, including being unaware of numerous rounds of voting, even though he claimed to be an activist; and (4) was unable to give specifics regarding the time he was beaten as a as a 14-year-old child. The IJ found that Fasho's exhibits were fabricated because Fasho admitted to making the exhibits after he left Albania using pictures sent back to Albania with a family friend. The IJ did not believe that Fasho was a member of any organization. The IJ also noted that Fasho failed to produce any evidence of medical treatment or harm. The IJ did not dispute that Fasho's father may have been held by communists in labor camps and that, after the economic turmoil in 1997, Albanian citizens were subject to general conditions of violence and human rights violations. The IJ also noted, however, that Fasho's testimony varied so

10

much from the Asylum Profile that he could not be deemed credible.  The IJ concluded that Fasho had not satisfied even the lower burden of proof for asylum.

Fasho appealed to the BIA, which affirmed the IJ's credibility determination and conclusion that Fasho was ineligibility for asylum, withholding of removal, or CAT relief.  However, the BIA disagreed with the IJ's conclusion that the asylum application was frivolous, noting that Fasho's documents had not been subjected to forensic analysis.  Fasho petitioned for review in this Court.

## II.  DISCUSSION

### A.    Due Process Claim

On appeal, Fasho argues that his due process rights were violated by the BIA's issuance of a short opinion adopting the reasoning of the IJ.  Fasho contends that the BIA did not undertake a meaningful review and did not set forth its reasons for denying his claims for asylum and withholding of removal.  We disagree.[1]

"To establish due process violations in removal proceedings, aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial prejudice." Lonyem v. U.S. Atty. Gen., 352 F.3d 1338, 1341-42 (11th Cir. 2003).   A short BIA order affirming an IJ's determination does not preclude meaningful review such that due process rights are

---

[1]We review constitutional challenges de novo.  Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003).

11

violated "because an appellate court 'will continue to have the IJ's decision and the record upon which it is based available for review.'" Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1288-89 (11th Cir. 2003) (addressing summary affirmance under 8 C.F.R. § 3.1(a)(7)(iii) now codified at 8 C.F.R. § 1003.1(e)(4)) (quoting in part Albathani v. INS, 318 F.3d 365, 377 (1st Cir. 2003));[2] see also Prado-Gonzalez v. INS, 75 F.3d 631, 632 (11th Cir. 1996) (addressing BIA's decision adopting IJ's reasoning for denying of suspension of deportation).

Here, the BIA did not violate Fasho's due process rights when it affirmed the IJ's order in a short opinion. The BIA's one-paragraph order adopted the IJ's credibility determination and his reasoning regarding Fasho's eligibility for asylum and withholding of removal, but sustained Fasho's petition for review as to whether his asylum claim was frivolous. Fasho is not entitled to a full opinion by the BIA because we have the IJ's decision and the complete administrative record to review. Furthermore, Fasho has presented no evidence that the BIA Board member failed to conduct a sufficient review of Fasho's case before affirming. In fact, Fasho prevailed on one of the issues in his petition for review.

---

[2]We point out that BIA's order in Fasho's case was not a summary affirmance pursuant to 8 C.F.R. § 1003.1(e)(4), which approves the result reached by the IJ, but does not necessarily approve the IJ's reasoning. Instead, the BIA's order was a short decision on the merits of Fasho's claims pursuant to 8 C.F.R. § 1003.1(e)(5). The BIA affirmed the IJ's decision with respect to the credibility determination and eligibility for asylum and withholding of removal, but modified the decision with respect to the IJ's frivolity determination.

**B.     Adverse Credibility Determination**

Fasho also argues that substantial evidence does not support the IJ's adverse credibility finding.[3]  We review credibility findings under the substantial evidence test, and "like any fact finding, [they] may not be overturned unless the record compels it."  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005).

An alien applying for asylum has the burden to show, with specific and credible evidence, either: (1) past persecution on account of a statutorily listed factor, such as political opinion, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution.  8 C.F.R. § 208.13(a), (b); Al Najjar v. Ashcroft, 257 F.3d 1262, 1287 (11th Cir. 2001).  "The trier of fact must determine credibility, and [we] may not substitute [our] judgment for that of the [IJ] with respect to credibility findings."  D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004).  "[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application" when there is no other evidence of persecution.  Forgue, 401 F.3d at 1287.  "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on

_____

[3]Because the BIA's decision adopted the IJ's findings as to credibility and eligibility for asylum, we review the orders of both the BIA and the IJ.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  Additionally, on appeal Fasho argues only that he is eligible for asylum and does not challenge the IJ's determination with regard to withholding of removal or CAT relief. Therefore, we do not address these claims further.  See Mendoza, 327 F.3d at 1286 n.3.

substantial evidence." Id. Although "[u]ncorroborated but credible testimony may be sufficient to sustain the burden of proof for demonstrating eligibility for asylum . . . [t]he weaker an applicant's testimony . . . the greater the need for corroborative evidence." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (citation omitted).

The IJ detailed specific inconsistencies and deficiencies in Fasho's testimony and documentary evidence, which related directly to Fasho's claim that he was persecuted based on his political opinion. Furthermore, these inconsistencies and deficiencies are supported by substantial evidence. Fasho's description of political persecution by a reconstituted Communist Party disguised as the Socialist Party is inconsistent with the Asylum Profile and the 2001 Country Report. Fasho's claim that he was a political activist and observer of the 2001 parliamentary elections was undermined by the fact that he did not know how members of the Albanian parliament were elected and was unfamiliar with the way the 2001 elections proceeded or the name of the primary European election governance body sent to observe those elections. Furthermore, Fasho at times could not recall details, became confused or contradicted himself. For example, Fasho was also unable to recall the year he left Albania and appeared confused about whether his supporting declarations were given by neighbors or cousins. Fasho first testified that he was 14 years old in 1997 and then testified that he was

17 years old in 1998. Likewise, Fasho testified initially that his father was attacked by the secret police in 1997, but later testified that he was attached by Socialist Party members after being told that the DPA was in power in 1997. In addition, Fasho's party membership documents are questionable given that Fasho obtained them only after he arrived in the United States and sent his picture to his brother, who affixed them to the documents. Fasho also failed to provide any hospital records, although he claimed to have been twice hospitalized for at least two days.

The record as a whole does not compel a contrary conclusion to that reached by the IJ. Accordingly, we are bound to affirm the IJ's denial of asylum.

**PETITION DENIED.**