[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16668
Non-Argument Calendar

_____

Agency No. A96-276-928

MARIE LUCIE JEAN GILLES HENRYS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 7, 2006)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Marie Lucie Jean Gilles Henrys, a native and citizen of Haiti, petitions for

review of a decision of the the Board of Immigration Appeals that affirmed the denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture. Henrys alleges that she is entitled to relief because her employer persecuted her on the basis of her religion. We deny her petition.

## I. BACKGROUND

On September 12, 2002, Henrys was admitted to the United States as a non-immigrant visitor allowed to remain in the United States until March 11, 2003. Before she arrived in the United States, Henrys was employed as a passenger handling supervisor for H.A.T. Enterprises at the Port-au-Prince Airport. Henrys alleges that she has been a Jehovah's Witness since she was a child.

In her asylum application, Henrys alleged that in July 2001 Hans Allen Theophile, the president of H.A.T. Enterprises who had connections with the government of then-President Aristide, hired someone to kill his daughter, Natasha, because Natasha became a Jehovah's Witness. Natasha's husband, Franz, who is also a Jehovah's witness, was arrested for her murder. Henrys alleged Theophile called Henrys in the middle of the night on July 15, 2001, and warned Henrys that she should leave the Jehovah's Witness religion. Theophile stated that he intended to kill all Jehovah's Witnesses. After the call, Henrys continued to work for H.A.T. Enterprises, but Theophile accused Henrys of "tolerating thieves,"

2

and Theophile transferred Henrys to another department. Henrys also received emails from a friends and colleagues that warned Henrys to be careful or she would be killed.

In response to a notice of intent to deny her application, Henrys submitted documents to corroborate her allegations: letters from H.A.T. Enterprises and Air France that stated Henrys was a passenger handling supervisor, letters that evidenced the fact that Henrys had been transferred, a letter sent by Henrys that stated Henrys was resigning from H.A.T. Enterprises because she was transferred, and an article about the human rights abuses in Haiti. Henrys also submitted a statement that Theophile would have the Direction of the West Department, a government law enforcement group, "take care of [her]" or "get her" if Henrys continued to practice the Jehovah's Witness religion. Henrys stated that Theophile made other threats in the following months and demoted Henrys from lead supervisor to baggage handler. Henrys complained that the government did not offer her any protection.

DHS charged Henrys with removability, and Henrys conceded removability, but argued that she was entitled to asylum, withholding of removal, and relief under the CAT. At the removal hearing, Henrys testified that on July 15, 2001, she heard from a friend that Natasha had been killed and called Theophile to offer her

3

condolences. During the call, Theophile surmised that Franz, Natasha's husband, had killed Natasha. Henrys responded that Franz could not have killed Natasha because Franz is a Jehovah's Witness. Henrys informed Theophile that she had heard Natasha had been attacked by gangsters. When Theophile discovered that Henrys had learned this from a member of her Jehovah's Witness congregation, Theophile threatened to "exterminate" all Jehovah's Witnesses and Henrys if she did not leave the religion. During her direct testimony, Henrys did not mention any call at midnight from Theophile.

On cross examination, Henrys stated that she had entered the United States 9 times since 2001 and 33 times since 1999. Henrys stated that her son, David, is a citizen of the United States. When the government asked Henrys why her resignation letter did not mention the religious persecution she suffered, Henrys responded that she wanted the letter to be "simple" and "not offer much detail[s]." Henrys also stated that she did not submit any of the warning emails she allegedly received because she "did not think the Court would need it."

When the IJ asked Henrys why her asylum application failed to mention her condolence call to Theophile, Henrys explained that she omitted her call to Theophile because of space limitations. The IJ asked Henrys whether she could produce any documents to support her allegations about Natasha's murder, but

4

Henrys had no documents. When the IJ asked Henrys why Theophile did not fire her, Henrys answered that Theophile did not want to give severance pay to Henrys.

The IJ denied Henrys's application for aslyum. The IJ made an adverse credibility finding. The IJ "found [Henrys's] testimony to be extremely improbable and not credible," because it was based on hearsay evidence and was "completely speculative and uncorroborated." The IJ found Henrys's testimony was inconsistent with her asylum application and Henrys failed to provide any documentary evidence that she is a Jehovah's Witness or Natasha's murder occurred.

The IJ concluded that Henrys had failed to establish past persecution because the alleged harrassment suffered by Henrys at H.A.T. Enterprises was not based on Henrys's religion. The IJ also stated that her claim of asylum was "implausible" because Henrys had "been significantly traveling back and forth" between Haiti and other countries in the world, and Henrys had returned to Haiti and her position at H.A.T. Enterprises even after the alleged incidents of persecution. The IJ stated that Henrys "has never been physically harmed, nor physically mistreated in any way."

The IJ also concluded that Henrys failed to establish a well-founded fear of future persecution, because Henrys could avoid future prosecution by finding

5

different employment in Haiti and Theophile no longer had connections with the government because the government in Haiti had changed. The IJ denied withholding of removal and relief under the CAT. The IJ concluded that Henrys failed to establish withholding of removal because she was not eligible for asylum. The IJ denied relief under the CAT because Henrys had not been tortured, Henrys could relocate within Haiti, and Henrys failed to establish that any member of the Haitian government instigated the alleged torture.

Henrys appealed the decision of the IJ, and the BIA affirmed. The BIA concluded that Henrys failed to establish past persecution based on Henrys's religion because "[t]he fact that [Henrys] is a Jehovah's Witness appears to be completely unrelated to the conduct of the employer." The BIA rejected Henrys's argument that she had not been given adequate opportunity to establish that Theophile wanted to kill Henrys because she knew Theophile murdered his daughter. The BIA found that if Henrys's knowledge of the murder was the reason Henrys feared harm, then "[h]er fear is not on account of a protected ground."

The BIA also affirmed the decisions of the IJ that Henrys had failed to establish a well-founded fear of persecution. Because President Aristide was no longer in power, the BIA stated, "even if [Henrys's] allegations are true, her former employer no longer has the ability to persuade police and other officials to carry

6

out his will." The BIA concluded that Henrys had failed to establish eligibility for withholding of removal because she had failed to establish her burden of proof for asylum. The BIA also concluded that Henrys was not entitled to relief under CAT.

## II. STANDARD OF REVIEW

Because the BIA issued a separate opinion from the IJ, we review the decision of the BIA, except to the extent that the BIA expressly adopts the decision of the IJ. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review an adverse credibility finding for substantial evidence. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). We reverse the decision of the IJ only where the record compels a contrary conclusion. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005). We review the scope of constitutional rights de novo. Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003).

## III. DISCUSSION

Henrys presents arguments about both the merits of her application and the fairness of her administrative proceedings. First, Henrys argues that the IJ and the BIA erred because substantial evidence does not support (1) the adverse credibility finding, (2) the denial of asylum, (3) the denial of withholding of removal, and (4) the denial of relief under CAT. Second, Henrys argues that her right to due process was violated because the BIA erroneously found that Henrys failed to

7

establish ineffective assistance of counsel, the IJ did not allow Henrys to present additional testimony, and the IJ did not consider evidence. We consider each argument in turn.

*A. Substantial Evidence Supports the Adverse Credibility Finding by the IJ.*

Henrys argues that the IJ erroneously found that Henrys was not credible, but that finding is supported by substantial evidence. The IJ found Henrys's testimony was inconsistent with her application because Henrys failed to mention her condolence call to Theophile in her application or her written submission in response to the notice of intent to deny. The IJ also found Henrys's story implausible. Henrys failed to provide any evidence about Natasha's murder or Franz's arrest. Henrys also failed explain why Theophile would pay to have Henrys killed but not give Henrys severance pay, why Theophile promoted Henrys in spite of her religion, why Henrys did not mention the religious animosity in her resignation letter, and why Henrys continued to work at H.A.T. Enterprises after the threats on her life. These "specific, cogent," and numerous reasons support the adverse credibility finding of the IJ. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

*B. Substantial Evidence Supports the Denial of Asylum.*

To apply for asylum, an alien must be a "refugee." 8 U.S.C. § 1158(b)(1).

8

A "refugee" is any person who is unable to return to his home country "because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b). To be eligible for asylum, Henrys had the burden to establish either past persecution or a well-founded fear of future persecution. The denial of Henrys's application is supported by substantial evidence.

1. Henrys Failed to Establish Past Persecution Based on Her Religion.

Henrys argues that she suffered past persecution because Theophile threatened Henrys that he would kill Henrys if she did not leave the Jehovah's Witness religion. "'[P]ersecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quoting Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000)). Persecution must also "at least in part, be motivated by a protected ground." Tan v. U.S. Att'y Gen., 437 F.3d 2125, 2131 (2006).

Henrys's argument fails for two reasons. First, substantial evidence supports the conclusion of the IJ that the threats Henrys received did not rise to the level of persecution. Other than the email from a friend and other "verbal harassment,"

9

Henrys did not allege any harm to herself or her family members. Sepulveda, 401 F.3d at 1231. Second, Henrys failed to establish that Theophile harassed her because Henrys is a Jehovah's Witness. As the IJ and BIA noted, Henrys failed to mention religious persecution as a basis for her resignation, and Henrys argued before the BIA that Theophile threatened her because Henrys knew Theophile had his daughter murdered.

### 2. Henrys Failed to Establish a Well-Founded Fear of Future Persecution.

Henrys also argues that she is eligible for asylum because she established a well-founded fear of persecution. To establish a well-founded fear of future persecution, Henrys had to prove a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country. 8 C.F.R. § 208.13(b)(2). The fear of persecution had to be both "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

Henrys failed to establish a well-founded fear of persecution because the government in Haiti has changed. Henrys alleged that Theophile had extensive connections with the Aristide government, which allowed Theophile to carry out the threats Theophile made against Henrys. Because Aristide is no longer the President, Theophile can no longer utilize his connections to accomplish the

10

alleged threats. Henrys accordingly has no "good reason to fear" reprisal. See

Sepulveda, 401 F.3d at 1231.

*C. Substantial Evidence Supports the Denial of Withholding of Removal.*

We also deny Henrys's petition for withholding of removal. An alien is

entitled to withholding of removal if "his life or freedom would be threatened on

account of race, religion, nationality, membership in a particular social group, or

political opinion." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir.

2003). The standard to establish withholding of removal is "more stringent than

the 'well-founded fear' standard for asylum." D-Muhumed, 388 F.3d at 819.

Because Henrys failed to meet the standard for asylum, her petition for

withholding of removal necessarily fails. See id.

*D. Substantial Evidence Supports the Denial of Relief Under CAT.*

Henrys failed to establish that she is entitled to relief under CAT. Under

CAT, an applicant must "establish that it is more likely than not that he or she

would be tortured if removed to the proposed country of removal." 8 C.F.R. §

208.16(c)(2). Torture is "any act by which severe pain or suffering, whether

physical or mental, is intentionally inflicted on a person . . . at the instigation of or

with the consent or acquiescence of a public official." Id. § 208.18(a)(1). Henrys

failed to present any evidence that she will be subject to torture with the consent of

11

the Haitian government.

*E. No Violation of Due Process Occurred.*

"Due process requires that aliens be given notice and opportunity to be heard in their removal proceedings." Fernandez-Bernal v. Att'y Gen., 257 F.3d 1304, 1311 (11th Cir. 2001). "[T]o establish a due process violation, an alien must show that [] she was deprived of liberty without due process of law." Garcia v. Att'y Gen., 329 F.3d 1217, 1222 (11th Cir. 2003). Henrys argues that her right to due process was violated for three reasons: (1) the failure by her counsel to submit documents or call witnesses constituted ineffective assistance of counsel, (2) the IJ did not allow Henrys adequate opportunity to present evidence, and (3) the IJ failed to understand and consider the testimony of Henrys. Each argument fails.

1. Henrys Failed to Establish Ineffective Assistance of Counsel.

Henrys failed to establish ineffective assistance of counsel. To establish ineffective assistance of counsel in the context of a deportation proceeding, we have stated that an alien must prove that her lawyer's "deficient performance resulted in prejudice to" her. Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1274 (11th Cir. 2005). Henrys failed to establish deficient performance as required by Matter of Lozado, 19 I. & N. Dec. 637, 638–39 (1988). Alternatively, the alleged failure by Henrys's counsel to submit documents or present testimony did not

12

prejudice Henrys's application for asylum.

2. The IJ Gave Henrys Adequate Opportunity to Present Evidence.

Henrys's arguments that the IJ did not allow her adequate opportunity to testify and present documentary evidence also fail. An IJ "may set and extend time limits for the filing of applications and related documents and responses thereto." 8 C.F.R. § 1003.31(c), and may grant a continuance "for good cause," id. § 1003.29. Henrys had over a year to submit evidence. Henrys failed to request a continuance, and the IJ acted within his discretion to refuse the documents she sought to present. Henrys was also given an adequate opportunity to testify.

3. The IJ Considered and Understood the Evidence.

The argument by Henrys that the IJ misunderstood or failed to consider the evidence fails. "[T]he [Immigration Judge] must . . . consider all evidence introduced by the applicant," Forgue, 401 F.3d at 1287, but "[w]here . . . the [Immigration Judge] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented," Tan, 437 F.3d at 2130 (internal quotations and citations omitted); see 8 C.F.R. § 1240.1(c). Henrys argues that the IJ did not consider all the evidence or misunderstood the evidence, but the detailed opinion of the IJ belies this assertion.

13

## IV. CONCLUSION

Henrys's petition for review is

**DENIED.**