[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 28, 2006
THOMAS K. KAHN
CLERK

No. 06-11833
Non-Argument Calendar
_____

BIA No. A79-508-350

NOHRA YOLANDA OCAMPO-RONCANCIO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 28, 2006)**

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Nohra Yolanda Ocampo-Roncancio, a native and citizen of Colombia,

petitions this Court for review of the final order of the Board of Immigration

Appeals (BIA), which affirmed the immigration judge's (IJ's) order of removal. The IJ found that Ocampo-Roncancio's asylum claim was time-barred and denied her requests for withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and her claim for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). On appeal, Ocampo-Roncancio argues that: (1) her asylum application was improperly denied based on the INA's one-year time limitation for filing asylum applications, and (2) the IJ and the BIA erred by denying her application for withholding of removal based on her failure to establish her membership in a statutorily protected group. Ocampo-Roncancio urged that she was a member of a social group persecuted by the Cali Cartel by virtue of her refusal to transport cocaine, on behalf of the Cartel, from Colombia to the United States.[1] We dismiss the petition in part for lack of subject-matter jurisdiction, and deny it in part.

In the case at bar, the BIA issued a decision in which it adopted the IJ's reasoning without making additional findings. "We therefore review the IJ's

---

[1]Ocampo-Roncancio asserts no claim concerning the denial of CAT relief, although in her brief, she does mention that such relief was denied in laying out the underlying procedural history and facts. Accordingly, she is deemed to have abandoned any argument concerning the denial of CAT relief. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (noting that when an appellant fails to raise any challenge to the denial of CAT relief in her brief, that issue is abandoned).

decision as if it were the BIA's." Wei Chen v. U.S. Att'y Gen., --- F.3d ----, 2006 WL 2570870 at *2 (11th Cir. Sept. 8, 2006). We review the IJ's factual determinations using the substantial evidence test, meaning that we must affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (citation and quotation marks omitted). In order to reverse the IJ's decision, we must find that the record not only supports reversal, but compels it. See Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002). We review questions of subject-matter jurisdiction and constitutional challenges in immigration proceedings de novo. See Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003) (constitutional challenges); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 n.5 (11th Cir. 2003) (subject-matter jurisdiction).

On appeal, Ocampo-Roncancio first argues that the IJ and the BIA erred by applying the one-year time limit for filing an asylum application. Ocampo-Roncancio arrived in the United States on February 3, 1999, but did not file her asylum petition under October 5, 2001. "An asylum application must be filed within 1 year after the date of the alien's arrival in the United States." Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005); INA § 208(a)(2)(B); 8 U.S.C. § 1158(a)(2)(B). An untimely application "may be considered . . . if the alien demonstrates . . . extraordinary circumstances relating to

3

the delay in filing an application." INA § 208(a)(2)(D) (emphasis added); 8 U.S.C. § 1158(a)(2)(D). The determination as to whether an alien can apply for asylum, however, is left exclusively to the Attorney General as "federal courts do not have jurisdiction to review the Attorney General's decision as to timeliness of such a request." Fahim, 278 F.3d at 1217; see also INA § 208(a)(3); 8 U.S.C. § 1158(a)(3) (providing that "[n]o court shall have the jurisdiction to review any determination of the Attorney General under paragraph (2) [the provision providing that the one-year time limit may be waived if extraordinary circumstances are demonstrated].")); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (noting that 8 U.S.C. § 1158(a)(3) "divests our Court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing").

In Fahim, we held that although there is a "presumption favoring judicial review," we lack jurisdiction to review the Attorney General's extraordinary-circumstances determination because the specific statutory language of 8 U.S.C. § 1158(a)(3) demonstrates that Congress intended to bar such review. See 278 F.3d at 1217-18. And, after passage of the REAL ID Act of 2005,[2] we again

---

[2] Pub. L. 109-13, 119 Stat. 231 (REAL ID Act). After passage of the REAL ID Act, we have jurisdiction to review questions of law raised in the petition for review. Tovar-Alvarez v. U.S. Att'y Gen., 427 F.3d 1350, 1351-52 (11th Cir. 2005).

recognized that § 1158(a)(3) continues to "divest[] our Court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing." Chacon-Botero, 427 F.3d at 957 (quotations and citation omitted). Thus, it is beyond our jurisdiction to review the extraordinary-circumstances determination and we must dismiss the petition in part.[3]

Turning to Ocampo-Roncancio's challenge to the denial of her application for withholding of removal, she argues that the IJ and the BIA erred by finding that she did not suffer past persecution or a well-founded fear of future persecution. She claims that if she returns to Colombia, she will be persecuted because she was constantly solicited by, and received death threats from, members of the Cali Cartel, even after she moved hours away from Bogota, but did not report the situation to the police because she feared for her safety.

An alien is entitled to withholding of removal under the INA if she can show that her life or freedom would be threatened on account of her race, religion,

---

[3]As for Ocampo-Roncancio's argument that the one-year time limit violates the Constitution's Supremacy Clause, the Third Circuit recently rejected this very argument. See Sukwanputra v. Gonzales, 434 F.3d 627, 631-32 (3d Cir. 2006). More specifically, the Third Circuit rejected the petitioners' argument, identical to the one made by Ocampo-Roncancio, that the one-year limit provided in § 1158(a)(2) conflicted with Article 34 of the United Nations Convention Relating to the Status of Refugees (1951 Convention). Id. at 631. The Third Circuit found no Supremacy Clause violation because: (1) Article 34 was not self-executing, and, thus, did not provide enforceable rights beyond those granted by the INA; and (2) the one-year limit was enacted after the 1951 Conventions and thus was "last in time" and, thus, overrode the 1951 Convention. Id. at 631-32 & n.3. We too can find no constitutional violation based on the Supremacy Clause.

nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287; see also INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284; 8 C.F.R. § 208.13(a). The applicant satisfies this burden by showing, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" of future persecution. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006). The second prong of both the past- and future-persecution tests requires the applicant to show that the alleged persecution was "on account of a protected ground." See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (discussing two-pronged tests for past and future persecution).

Here, substantial evidence supports the BIA's decision, as well as the IJ's finding, that Ocampo-Roncancio did not establish past persecution or a well-founded fear of future persecution because she did not establish her membership in a statutorily protected group. To meet her burden, Ocampo-Roncancio claimed she was a member of a social group -- persons who have been asked, but refused, to carry drugs on behalf of the Cali Cartel, from Colombia to the United States. The IJ said that he "could not find that an immutable characteristic exists to establish that [Ocampo-Oncancio] is a member of a particular social group." We recently considered whether an Colombian asylum applicant could establish refugee status

6

based on his membership in a group of "noncriminal informants working against the Cali drug cartel." Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190 (11th Cir. 2006). We observed the following:

> Congress did not directly speak on the issue of what constitutes a "particular social group," one of the five listed categories that qualify for refugee status or withholding of deportation, within the meaning of the INA. Accordingly, we must follow the BIA's determination that noncriminal informants working against the Cali cartel are not a social group under the INA unless the interpretation is unreasonable, i.e., arbitrary, capricious, or clearly contrary to law.

Id. at 1196 (citations omitted). We found reasonable, for purposes of establishing the existence of a "social group" within the meaning of the INA, the BIA's requirement of a "common, immutable characteristic . . . [that] is fundamental to [its members'] individual identities or consciences" -- the very standard the IJ applied to Ocampo-Roncancio's application here. Id. at 1196-97 (citing Matter of Acosta, 19 I. & N. Dec. 211, 233-34 (BIA 1985), overruled on other grounds by Matter of Mogharrabi, 19 I. & N. Dec. 439, 447 (BIA 1987)). On this record, we can discern no legal error in the IJ's definition of a "social group," nor does the record compel reversing any of the IJ's factual findings.

Based on Ocampo-Roncancio's failure to identify a statutorily protected social group, of which she was a member, the IJ did not err by denying the petition

for withholding of removal.[4] Accordingly, we deny the petition as to the withholding claim.

**PETITION DISMISSED IN PART AND DENIED IN PART.**

---

[4]The IJ also found that Ocampo-Roncanio presented no evidence that the Cali Cartel ever attempted to harm her, but had threatened her only once after she stated that she would file a report with the police. In addition, Ocampo-Roncancio described telephone calls, during which the caller recruited her to engage in drug trafficking. Although the INA does not expressly define "persecution," we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation," and "[m]ere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (quotations and citation omitted; alteration in original). In addition to our conclusion that the IJ did not err by finding no statutorily protected social group, we also observe that the record does not compel reversing the IJ's finding that the passage of over five years since Ocampo was solicited by the woman from the drug cartel suggested that Ocampo would not be contacted by the cartel in the future. Moreover, even assuming that Ocampo was called on the telephone by the drug cartel specifically because of her status as a person who refused to carry drugs to the United States, this treatment would not rise to the level of persecution under the INA.