[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 10, 2003
THOMAS K. KAHN
CLERK**

_____

No. 03-11002
Non-Argument Calendar

_____

Agency Docket No. A77-251-509

TSAYO CYRILLE LONYEM,

Petitioner,

versus

U.S. ATTORNEY GENERAL,
IMMIGRATION AND NATURALIZATION SERVICE,

Respondents.

_____

Petition for Review of an Order
of the Board of Immigration Appeals

_____

**(October 10, 2003)**

Before DUBINA, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

This petition arises from immigration proceedings in which the Board of

Immigration Appeals ("BIA") affirmed without opinion the denial of Tsayo

Cyrille Lonyem's motion to reopen his final *in absentia* removal proceeding. Upon review, we deny Lonyem's petition.

BACKGROUND

In January 1999, Lonyem, a native and citizen of Cameroon, was admitted to the United States as a tourist with permission to remain for three months. Lonyem overstayed his visa and later that year applied for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), claiming that based on his affiliation with Global Village Cameroon, an environmental protection group that opposed the Biya government, he was unlawfully arrested, tortured, and subject to forced labor. An asylum officer referred Lonyem to the immigration court for a full hearing on his claims. In connection with that referral, the Immigration and Naturalization Service ("INS") issued Lonyem a notice to appear,[1] charging him with removability under INA § 237 (a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted.

On February 10, 2000, two weeks prior to the removal hearing, Lonyem filed a motion for a change of venue from Atlanta to Baltimore because both he and his attorney lived in Baltimore. Lonyem also conceded his removability, but

_____

[1] The notice to appear required Lonyem to appear for a removal hearing in Atlanta on February 24, 2000, based upon Lonyem's address in his application for asylum.

2

sought asylum. The immigration judge ("IJ") denied this motion. Lonyem did not appear for the removal hearing and consequently, on February 24, 2000, the IJ ordered Lonyem removed to Cameroon *in absentia* because Lonyem had conceded his removability.

On March 21, 2000, Lonyem filed an emergency motion to reopen his removal proceedings. He submitted a sworn affidavit attesting that he had contracted malaria the day before the hearing and sought medical attention from a family friend and licensed nurse.[2] He also attached to his motion the sworn affidavit of his nurse attesting, *inter alia*, that she had treated Lonyem for malaria by giving him prescription medication and Tylenol.

The IJ denied Lonyem's motion to reopen, discounting Lonyem's assertions that he had been sick and unable to attend the removal hearing. Lonyem then appealed to the BIA, arguing that the IJ's adverse credibility findings were speculative and unsupported by the record and that his sudden bout of malaria constituted exceptional circumstances justifying his failure to appear. On July 1,

---

[2] The affidavit also asserted that Lonyem had traveled to Atlanta with the intention of attending the hearing but could not afford to arrange for his attorney to travel to the hearing. Lonyem stated that he attempted to contact his attorney on the day of the hearing but was unsuccessful.

2002, the BIA affirmed the IJ's decision without an opinion pursuant to 8 C.F.R. § 3.1(a)(7) (2002).[3]

Lonyem challenges the determination of the IJ that Lonyem failed to show exceptional circumstances justifying reopening of his *in absentia* removal order. Lonyem argues that the IJ erred in applying a new evidentiary standard. Lonyem further asserts that he was deprived of due process when (1) the IJ applied a new evidentiary standard without affording him proper notice; and (2) the BIA did not review the facts of his case or explain why it denied his appeal.

DISCUSSION

Because Lonyem's removal proceedings commenced in 2000, the permanent provisions of the Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009 (1996), govern his petition for review. *See* 8 U.S.C. § 1252; *Gonzalez-Oropeza v. United States Attorney Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003). When the BIA issued an affirmance without an opinion, the immigration judge's decision became the final order subject to review. *See*

---

[3] The BIA later vacated and reissued the decision as of January 30, 2003, because of improper mailing of the original decision.

4

*Mendoza v. United States Attorney Gen.*, 327 F.3d 1283, 1284 n.1 (11th Cir. 2003) (reviewing 8 C.F.R. § 3.1(a)(7)(2002)).

## I

We first consider Lonyem's challenge to the IJ's determination that he failed to show exceptional circumstances justifying the reopening of his *in absentia* removal order.

We review the denial of a motion to reopen for an abuse of discretion. *INS v. Abudu*, 485 U.S. 94, 105 (1988). Motions to reopen are disfavored. *Id.* at 107-08. The immigration judge's administrative findings of fact are conclusive unless a reasonable factfinder would be compelled to conclude to the contrary. *Fahim v. United States Attorney Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002). While this Court has not outlined a specific standard for reviewing credibility determinations, other circuits have adopted a substantial deference standard. *See, e.g.*, *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002); *Akinmade v. INS*, 196 F.3d 951, 954 (9th Cir. 1999).

The INA provides that a petition for review challenging an order entered *in absentia* is "confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable." INA § 240(b)(5)(D), 8 U.S.C. § 1229a(b)(5)(D). Only the second ground is at issue in this case. An *in absentia* removal order may be rescinded if the alien demonstrates that the failure to appear was because of exceptional circumstances beyond the control of the alien, such as serious illness of the alien or serious illness or death of the alien's spouse, child, or parent, but not including less compelling circumstances. *See* INA § 240 (b)(5)(C), (e)(1), 8 U.S.C. § 1229a(b)(5)(C), (e)(1); 8 C.F.R. § 3.23(b)(4)(ii) (2002).[4]

The phrase "serious illness" is not defined in the statute or its implementing regulations. The BIA has suggested several ways in which such an illness may be demonstrated. "A medical professional ... comment[], in detail, on the severity of the illness of the alleged. In the alternative, [such a] claim may [be] substantiated through detailed affidavits from the respondent, roommates, friends, and co-workers, attesting to the extent of his disabilities and the remedies used." *In re J-P-*, 22 I & N Dec. 33 (1998).

---

[4] Effective February 28, 2003, certain regulations previously at 8 C.F.R. Part 3, including the ones at issues in this case, were transferred to 8 C.F.R. Part 1003. *See* 68 Fed.Reg. 9824, 9826 (2003).

The only details Lonyem provided about his illness were contained in the affidavit of his nurse. The immigration judge concluded that this affidavit, standing alone, was not enough to corroborate Lonyem's claim that he was too sick to attend his removal hearing. Although Lonyem suggests that the IJ's conclusion advances a new and heightened evidentiary standard, we disagree.[5] The IJ found it questionable that a licensed nurse would dispense prescription medication for a potentially lethal illness without further corroboration. The IJ did not *require* Lonyem to submit evidence of prescriptions; the IJ merely found that Lonyem's affidavits, as submitted, were not credible.[6]

Lonyem did not indicate that he made any effort to contact the Immigration Court on the day of his removal hearing to alert the IJ of his absence and to explain the reasons for it. Giving such notice of one's unavailability is a minimal and logical step that, if not taken, is a factor which tends to undermine a claim of exceptional circumstances. This failure is particularly noteworthy given the fact that Lonyem tried, albeit unsuccessfully, to contact his attorney in Baltimore.

---

[5] The argument is improperly before this Court because it was not exhausted before the agency. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *see also Fernandez-Bernal v. Attorney General*, 257 F.3d 1314, 1317 n.13 (11th Cir. 2001).

[6] Even if the affidavits of Lonyem and the nurse, taken alone, were deemed credible, it is questionable whether they were sufficiently detailed in the treatment or duration of the illness to support a conclusion that Lonyem demonstrated extraordinary circumstances warranting reopening of removal proceedings. *See, e.g.*, *In re J-P-*, 22 I & N Dec. 33 (1998).

7

For these reasons, we conclude that the IJ did not abuse its discretion in determining that Lonyem did not demonstrate "exceptional circumstances" sufficient to justify a reopening of his removal proceedings.

II

Having concluded that the immigration judge did not abuse its discretion in determining that Lonyem did not demonstrate "exceptional circumstances," we turn next to Lonyem's due process claims. Lonyem argues that his due process rights were violated because the IJ applied a new evidentiary standard and the BIA did not review the facts of his case or explain why it denied his appeal.

We review constitutional challenges *de novo*. *Alabama Power Co. v. F.C.C.*, 311 F.3d 1357, 1367 (11th 2002). To establish due process violations in removal proceedings, aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial prejudice. *Gonzalez-Oropeza*, 321 F.3d at 1333.

As noted above, the IJ did not apply a new evidentiary standard to Lonyem's case. *See supra* note 6. We turn to Lonyem's claim that the BIA's order summarily affirming the IJ violated his due process rights.

Pursuant to 8 C.F.R. § 3.1(a)(7), a single member of the BIA may affirm, without opinion, the decision of the IJ if that Board member determines that the

8

result was correct and that any errors were harmless and immaterial, and "that (A) the issue on appeal is squarely controlled by existing precedent; [and] (B) the factual and legal questions raised on appeal are so insubstantial that three-member review is not warranted." *Garcia v. Attorney Gen.*, 329 F.3d 1217, 1223 (11 Cir. 2003) (quoting 8 C.F.R. § 3.1(a)(7)(ii)). The decision of the IJ becomes the final agency decision. *Id.* Thus, under the regulations, no entitlement to a full opinion by the BIA exists. *Gonzalez-Oropeza*, 321 F.3d at 1333. As the Supreme Court has made clear, "administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543 (1978) (citations omitted).

The fact that a single BIA member issued an affirmance without opinion (AWO) does not demonstrate that he did not review the facts of Lonyem's case. Lonyem presents no evidence that the BIA member who reviewed the case deviated from the regulations' requirements when determining that the case warranted a summary affirmance. Finally, Lonyem has failed to show substantial prejudice from BIA's issuance of an AWO. We accordingly find Lonyem's due process claims without merit.

CONCLUSION

9

For the foregoing reasons, we find that the IJ did not abuse his discretion in denying Lonyem's motion to reopen his *in absentia* removal proceedings, nor do we find that the BIA violated Lonyem's due process rights.

PETITION DENIED.