[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2006
THOMAS K. KAHN
CLERK

No. 05-13108
Non-Argument Calendar
_____

BIA No. A77-977-792

CUIYAN ZHU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(February 23, 2006)**

Before ANDERSON, BIRCH and KRAVITCH, Circuit Judges.

PER CURIAM:

Cuiyan Zhu petitions this court for review of the Board of Immigration

Appeals's ("BIA") denial of her motion to reopen its affirmance of the

Immigration Judge's ("IJ") denial of asylum relief.[1]  For the reasons that follow,

we grant the petition for review and remand the case to the BIA for further

proceedings.

## I.  Background

On October 30, 2001, the Immigration and Naturalization Service ("INS")[2]

issued Zhu, a citizen of China,  a Notice to Appear, charging her with being an

arriving alien without documentation, INA § 212(a)(7)(A)(i)(I); 8 U.S.C.

§ 1182(a)(7)(A)(i)(I).  Zhu filed an application for asylum,[3] asserting that she had

been mistreated in China in the past and that she feared she would be forced to

undergo sterilization if returned to China.

At a hearing before an IJ, Zhu conceded removability.  The parties then

submitted Zhu's sworn statement in lieu of lengthy testimony and stipulated that

Zhu's husband would confirm her testimony.  According to the statement, Zhu was

from the Fujian province in China.  She and her husband married at a young age

---

[1] Pursuant to the REAL ID Act, all petitions for review are governed by the permanent rules. Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1008 n.3 (11th Cir. 2005).

[2]  On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107–296, 116 Stat. 2125, which created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department.  Because these proceedings began under the INS's authority, we refer to that agency.

[3]  She also requested withholding of removability and relief under the Convention Against Torture.  On appeal, she does not challenge the IJ's decision denying relief on these grounds. Therefore, she has abandoned these issues.  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

despite the government's preference for later marriages and later births. When she became pregnant with her first child, the government ordered her to have an abortion, but she refused and went into hiding. In response, government officials destroyed the ceiling of her family's house as a warning. After Zhu gave birth to a daughter, she was fined for having a child without permission and was forced to implant an IUD for birth control. Zhu's husband subsequently came to the United States. Zhu was forced to submit to strict birth control practices for several years, but eventually obtained permission to remove the IUD and have another child because her first child was a daughter. The permission expired after a year, and she then was instructed to re-insert the IUD. Zhu came to the United States because she feared forced sterilization or a fine if she had more children without permission. While in the United States, Zhu gave birth to her second daughter, and she again feared she would be forced to undergo sterilization if she returned to China. In her supplemental testimony before the IJ, Zhu stated that she knew other people from her village who had been forced to undergo sterilization after the birth of a second daughter.

Zhu also submitted copies of her medical reports showing the use of an IUD between 1993 and 2001, and the State Department's Country Report on China indicating the use of a birth control policy strictly limiting the number of children a family could have. According to the report, these limitations were "relaxed," and

3

parents were permitted to have a second child if the first child was a daughter. Although the formal policy prohibited physical coercion to force women to undergo abortions or sterilization, the report acknowledged "intense pressure to meet birth limitation targets" resulting in the use of force to compel abortions or sterilizations.

Finally, Zhu submitted affidavits from John Aird, an alleged expert on population policy, explaining that a Chinese woman would still be subject to China's birth control limitations even though one of her children was born in the United States.

The IJ found Zhu removable and denied asylum relief. Although the IJ specifically found Zhu's testimony credible, he determined that Zhu had not established past persecution because there was no evidence that she had been forced to undergo an abortion or sterilization, and persecution as defined under the INA was limited to those two contexts. He further concluded that any future threat was speculative, as Zhu was not currently in violation of China's birth control policy because she had received permission for a second child and it was unknown whether Zhu would have more children.

Zhu appealed the IJ's determination, arguing that the decision was in conflict with the IJ's credibility findings. The BIA summarily affirmed. Thereafter, Zhu moved the BIA to reconsider and/or reopen her claim because of

4

new evidence.[4]  Since the BIA's decision, Zhu had become pregnant with her third child.[5]  She further asserted that the IJ erred in finding that there was no past persecution, and that her fear of future persecution was not speculative.  Finally, she claimed Aird's affidavit confirmed the prevalence of coercive population control techniques.  The BIA denied the motion, finding that Zhu had not shown any error of law or fact in the prior decision based on the available evidence at the time.  The BIA also rejected Aird's affidavit as based on second-hand information, found that there was no evidence that the application of China's policy to parents of foreign-born children rose to the level of persecution, and determined that Zhu had not established prima facie eligibility for asylum.

**II. Petition for Review**

In considering a petition for review, we are deferential to the BIA's decision and review the BIA's denial of a motion to reopen for abuse of discretion.  Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272 n.2 (11th Cir. 2005); Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001).  Motions to reopen are disfavored in removal proceedings because "as a general matter, every delay works to the

---

[4]  In her petition for review, Zhu does not challenge the BIA's denial of the motion for reconsideration.  Therefore, she has abandoned this issue.  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

[5]  The government does not argue that this circumstance is not new and material evidence to support a motion to reopen.

advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). The IJ's factual findings are conclusive unless a reasonable factfinder would be compelled to conclude to the contrary. Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1340 (11th Cir. 2003). Credibility determinations are entitled to deference. Id.; see also Yang v. U.S. Att'y Gen, 418 F.3d 1198, 1201 (11th Cir. 2005). An applicant seeking to reopen proceedings bears a "heavy burden." Najjar v. Ashcroft, 257 F.3d 1262, 1302-03 (11th Cir. 2001).[6]

The regulations provide that a motion to reopen "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c). The Board may deny a motion to reopen on several independent grounds including, inter alia, that the alien failed to establish a prima facie case of asylum eligibility.[7] Najjar, 257 F.3d at 1302 (citing Doherty, 502

---

[6] According to Zhu, she need only show that there is a reasonable likelihood of proving persecution. Zhu, however, misunderstands the burden of proof. Although other circuits may have imposed a "reasonable likelihood" test, this court has used a "heavy burden," requiring Zhu show, in this case, a prima facie eligibility for asylum. See Najjar v. Ashcroft, 257 F.3d 1262, 1302-03 (11th Cir. 2001).

[7] As this court has explained, "the provision is framed negatively, by directing the Board not to reopen unless certain showings are made. It does not affirmatively require the [BIA] to reopen the proceedings under any particular condition. Thus, the regulations may be construed to provide the [BIA] with discretion in determining under what circumstances the proceedings should be reopened." Najjar, 257 F.3d at 1301.

U.S. at 323).

An alien who is present in the United States may apply for asylum and the Attorney General has discretion to grant political asylum to any alien determined to be a "refugee" under the INA. 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1). A "refugee" is defined as one who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. The definition of "refugee" now includes, "[a] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program" or "a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance . . . ." INA § 101(a)(42)(B), 8 U.S.C. § 1101(a)(42)(B); Yang, 418 F.3d at 1202; see also In re X-P-T-, 21 I.&N. Dec. 634, 638 (BIA 1996).

"To establish asylum eligibility, the alien must, with specific and credible evidence, establish past persecution on account of a statutorily listed factor, or a 'well-founded fear' that the statutorily listed factor will cause such future persecution." 8 C.F.R. §§ 208.13(a) and (b); Yang, 418 F.3d at 1202. An applicant must demonstrate "that his or her fear of persecution is subjectively

7

genuine and objectively reasonable.  The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution.  In most cases, the objective prong can be fulfilled either by establishing past persecution or that he or she has a 'good reason to fear future persecution.'"  Yang, 418 F.3d at 1202.  An alien's testimony, if credible, may be sufficient to sustain the burden of proof.  8 C.F.R. § 208.13(a).

Here, the IJ properly determined that Zhu failed to establish past persecution as she was not forced to undergo sterilization or an abortion.  See Yang, 418 F.3d at 1202-03 (explaining that the 2001 State Department Report and the 1998 Country Conditions and Asylum information indicate that the Fujian province is known for its lax adherence to the birth control policies).  Moreover, the fact that she was fined for having her first child without permission does not rise to the level of persecution.  See id.  Furthermore, as Zhu admits, she received permission to have a second child.  Thus, she cannot show that she suffered past persecution based on China's strict birth control policy.

As to whether Zhu established a prima facie eligibility for asylum based on a well-grounded fear of future persecution, it is noteworthy that the IJ found Zhu's testimony to be credible.  Zhu testified that when she was pregnant with her first child, she was ordered to undergo an abortion and was fined when she had the child without the government's permission.  She also testified that she knew other

8

women in her village who were forced to undergo abortion or sterilization. Zhu's third pregnancy now places her in violation of China's birth control policy. Deferring to the IJ's credibility determination, Zhu's fear of forced sterilization if she returns to China is objectively and subjectively reasonable.

Moreover, there is corroborating evidence to support Zhu's credible testimony. First, the parties stipulated that Zhu's husband's testimony would confirm Zhu's statements. Second, although the State Department reports do not corroborate Zhu's fear, they do not undermine it either. The report indicates that the Chinese government engages in population control and limits the number of children a family may have. The report also states that coercive birth control measures are not policy, and yet it acknowledges that such coercive techniques do occur. Thus, the report provides some support for Zhu's fear.[8] Given Zhu's credible testimony and the supporting evidence, Zhu established at least a prima facie showing of asylum eligibility. Therefore, we conclude that the BIA abused its discretion by denying the motion to reopen. Accordingly, we **grant the petition** and **REMAND** to the BIA for further proceedings.

---

[8] In contrast, the BIA properly rejected Aird's affidavits because they were not specific to Zhu and were compiled several years before Zhu's application and hearing.