[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11660
Non-Argument Calendar

_____

BIA No. A29-346-270

HAROLD SEQUIERA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(October 26, 2007)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Harold Sequiera petitions for review of the Board of Immigration Appeals

("BIA") decision dismissing his appeal of the denial by the Immigration Judge

("IJ") of his application for adjustment of status under the Nicaraguan Adjustment

and Central American Relief Act of 1997 ("NACARA"), Pub. L. No. 105-100,

§ 202, 111 Stat. 2160, 2193 (1997) and application for waiver of inadmissibility

for crimes of moral turpitude pursuant to section 212(h) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1182(h).  Sequiera contends that he was

denied due process during his hearing before the IJ.  He also argues that he

presented sufficient evidence that his wife and mother would suffer extreme

hardship upon his deportation to merit waiver of his inadmissibility due to

commission of crimes of moral turpitude.  We deny his due process claims and

dismiss the petition as to his adjustment of status claims.

## I. BACKGROUND

Sequiera, a native of Nicaragua, became subject to deportation proceedings

as an alien who entered the United States without inspection in March of 1997.[1]

He filed applications for suspension of deportation and adjustment of status based

on his marriage to a United States citizen, Jennifer Bustamante.  Sequiera indicated

---

[1] Although the record does not include the original INS notices and application for adjustment of status to which Sequiera was a party, it makes clear that he initially petitioned for adjustment of status under NACARA along with his mother, brother, and sister, but later separated his case due to his own criminal history.

on the form that he had not been involved in any serious criminal offense. He supplemented his application by filing an approved I-130 petition, his marriage certificate, his wife's birth certificate, his birth certificate, his police record for his juvenile arrest, tax returns and bank statements, his fingerprints, medical examination records, and many other supporting documents. In December of 1998, however, because his marriage was ending, he moved to amend his application to seek relief under NACARA.

In January 1999, the IJ conducted Sequiera's deportation hearing. Because Sequiera still needed to file a waiver of inadmissibility to proceed under NACARA, the IJ heard testimony that day but agreed to continue the hearing to permit the filing and to hold in abeyance Sequiera's suspension of deportation application. During this initial portion of the hearing, Sequiera admitted to two prior arrests: one as a minor, for which he was never formally charged, and a second, when he was 18 years old, for two robberies in connection with which he eventually pled guilty and completed home arrest and two years of probation. He also testified that he did not realize that his immigration applications stated that he had never been arrested.

Sequiera also testified that he lived with his mother, Bertha Floris, his older brother, Alan Sequiera, and a younger sister, Maria Castro, in Floris's home, for which he had provided a portion of the down payment. Sequiera stated that he,

3

Floris, and Alan split the home's monthly mortgage payments. He explained that during his marriage, he had lived with Bustamante's parents and had not contributed to his mother's support. He testified that his father, half-siblings, aunts, and cousins also resided in the United States.

Floris testified that Sequiera's deportation would greatly affect her in that it would break-up her family. She confirmed that Sequiera had paid approximately $2,500 of the $8,000 down payment on her home and that he had helped her financially since he began working as a teenager. AR at 511, 512-13. She estimated her income as $250 per week. Id. at 514. She clarified that Castro was married and lived separately with her husband, but visited on the weekends. Because no further testimony was offered, the IJ continued the hearing to permit Sequiera to file his application for waiver of inadmissibility.

When the hearing was recovened, the IJ acknowledged receiving the waiver, but noted that Sequiera's medical records remained deficient. Sequiera did not offer to testify or to present further witnesses. Id. at 523. In closing, he argued a waiver of inadmissibility should be granted because, although he had committed a horrible crime, he had been young, manipulated by peers, and had not actually attacked the victims himself. He emphasized his remorse, the successful completion of his sentence, and the overall improvement of his situation. He

argued that deportation would bring extreme hardship to his immediate family, who were permanent residents, and that it would destroy his life.

The IJ observed that, in order to qualify for NACARA relief, Sequiera was required to prove that he: (1) was a Nicaraguan national; (2) who had entered the United States before 2 December 1995 and had continually resided there; and (3) was not otherwise inadmissible under 8 U.S.C. § 1182(a), unless the inadmissibility was waived under 8 U.S.C. § 1182(h). The IJ concluded that Sequiera met the citizenship and residency requirements, but was inadmissible due to his robbery arrests and convictions. The IJ found that Sequiera had failed to prove that his mother would suffer hardship sufficient to qualify him for waiver of inadmissability under § 1182(h)(1)(B). Accordingly, Sequiera's waiver of inadmissability and application for relief under NACARA were denied. The IJ also cited Sequiera's failure to supplement his medical record, as required by law, as an independent basis for denial. The IJ ordered Sequiera deported.

Sequiera appealed the IJ's decision. In his brief, Sequiera asserted that additional evidence, which had been unavailable at the hearing, merited remand. A few weeks later, he moved to stay a final order and decision of the appeal, on the ground that his former immigration counsel had conceded as to a grievance he filed against her for ineffective representation. Sequiera argued that, if he been adequately represented by counsel before the IJ, his waiver would have been

5

granted.  Sequiera also moved to incorporate additional exhibits into his pending appeal, reporting that he had married Yulaida Ramirez, a United States citizen, in April 2001, and that she had filed an I-130 relative petition thereby allowing him to proceed on an additional ground for relief.

In March 2002, the BIA granted Sequiera's unopposed motion to remand based on newly presented evidence and found it unnecessary to adjudicate his motion based on ineffective assistance of counsel.  On remand, the IJ was to consider the hardship to Ramirez in the context of an INA § 212(h) waiver. Sequiera filed the following additional evidence, all of which was later admitted without objection during the hearing:  (1)  affidavits attesting to his good moral character and criminal rehabilitation; (2) his tax return for 2004; (3) deeds to real estate; (4) employment pay stubs; (5) mortgage statements; (6) credit reports; and (7) bank statements.

At the July 2005 hearing, although the IJ stated that she would only hear the issue remanded by the BIA, she also requested evidence of any change in circumstances related to Floris.  Floris testified that Sequiera gave her $100 per month, that she currently earned $7.50 an hour, and that Castro now lived with her and contributed to the mortgage payments.  Id. at 124.  She reported that Alan was employed as an engineer and also sporadically provided her monetary support.

6

She also testified that Sequiera was a loving and caring person, who provided her sentimental and psychological support.

Ramirez described Sequiera as a person with a good heart, who takes care of people. She testified that she and Sequiera owned four homes together, that Sequiera was very close to his mother and other relatives, and that their marriage was strong, although financial difficulties had caused a short period of separation. When the IJ questioned the existence of financial difficulties in the face of their combined income of $100,000 per year, Ramirez explained that they differed in how to spend money. Id. at 138. Upon further questioning, she admitted that she earned approximately $40,000 per year herself and could likely afford the mortgage of the marital residence. Id. at 145, 147-8. She also admitted that she could likely secure health insurance through her employer. Floris, Ramirez and one of Sequiera's co-workers all testified to Sequiera's good moral character, and to his remorse over having committed crimes, including a 2004 DUI conviction about which he had not yet informed the court. Sequiera did not ask to testify, nor did he offer the testimony of any other witness. Id. at 155-56.

In light of the new evidence, the IJ found that Floris was able to work and only received $100 per month, other miscellaneous expenses, and general sentimental and psychological support from Sequiera. She also found that Ramirez owned multiple properties, earned at least $40,000 per year, and had provided no

7

detailed information as to the emotional hardship she would suffer if Sequiera were deported. The IJ found no evidence of any significant community involvement by Sequiera and pointed out that Sequiera had not provided any records or evidence of his DUI conviction or proper records concerning his tax liability. Referring to the discussion of legal standards and burdens of proof and eligibility for NACARA relief in her original January 1999 decision, and based on all of the testimony and documentary evidence presented, the IJ concluded that Sequiera had not offered sufficient evidence to show the extreme hardship necessary to warrant a change of her prior decision. She reasoned that, in balancing the positive and negative factors, "although there [was] the additional positive factor of a United States citizen spouse, there [was] also the additional negative factor of a DUI close to the time of the hearing," which weighed against discretionary relief under 8 U.S.C. § 1182(h). Id. at 96-97. Finally, she reasoned that Sequiera's failure to provide the required medical records made him statutorily ineligible for adjustment of status, notwithstanding any § 1182(h) waiver. Accordingly, for these reasons and for those stated in the January 1999 decision, the IJ denied Sequiera's application for adjustment of status under NACARA.

Sequiera filed a notice of appeal with the BIA, arguing that the IJ: (1) misinterpreted the hardship requirement to mean more than extreme hardship; (2) erred in requesting re-examination of the visa petition, limiting hearing testimony,

8

basing denial on failure to submit to a medical examination, and finding him not credible; and (3) improperly rescheduled the hearing. The BIA found no error in the IJ's finding that Sequiera had failed to demonstrate that Floris and Ramirez would suffer extreme hardship if he was deported and concluded that Sequiera had not met the burden of proof required to warrant relief under INA § 212(h). As for the alleged due process and procedural errors, the BIA found that Sequiera had not asked to testify himself and had not demonstrated how any of the alleged errors had caused him substantial prejudice. His appeal was dismissed. He now petitions for review of that decision.

## II. DISCUSSION

"We review constitutional challenges de novo." Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003) (per curiam). To establish a due process violation, a petitioner "must show that [he was] deprived of liberty without due process of law, and that the asserted error[] caused [him] substantial prejudice." Id. During a removal hearing, an alien "may present evidence and witnesses in his or her own behalf." 8 C.F.R. § 1240.11(c)(3)(iii). Further, "[t]he immigration judge shall receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing." 8 C.F.R. § 1240.1(c); see also 8 U.S.C. § 1229a(b)(1) (stating that the IJ shall "receive

9

evidence, and interrogate, examine, and cross-examine the alien and any witnesses").

In this case, the record demonstrates that Sequiera had the benefit of all of these prescribed procedures. The IJ afforded him a full and fair opportunity to present evidence and to testify, and made her decision based upon the entire record before her. Accordingly, we find that Sequiera's due process claim is without merit.

Before addressing Sequiera's non-constitutional claims, and in particular his argument that he established the extreme hardship requisite to a waiver of inadmissibility, we must first determine whether we have subject matter jurisdiction to hear the petition as to these issues. See Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1266 (11th Cir. 2004). "We review subject matter jurisdiction de novo." Id.

Section 202(f) of NACARA states that "[a] determination by the Attorney General as to whether the status of any alien should be adjusted under this section is final and shall not be subject to review by any court." § 202(f), 111 Stat. at 2196. Accordingly, we have recognized the clear intent of Congress to foreclose judicial review of determinations by the Attorney General in such cases. Ortega v. U.S. Att'y Gen., 416 F.3d 1348, 1350 (11th Cir. 2005) (per curiam). The INA similarly precludes appellate review of a denial of discretionary relief, such as

10

waiver of inadmissibility due to crimes of moral turpitude under 8 U.S.C. § 11822(h). 8 U.S.C. § 1252(a)(2)(B)(i). For these reasons, we conclude that we lack jurisdiction to review Sequiera's claims related to his adjustment of status.

### III. CONCLUSION

Sequiera petitions for review of the BIA's dismissal of his appeal of the IJ's denial of his application for adjustment of status under NACARA and waiver of inadmissibility. Sequiera first contends that he was denied due process during his hearing before the IJ. He also argues that he presented sufficient evidence to establish the extreme hardship requisite to a waiver of inadmissibility. Because the record clearly demonstrates that Sequiera had a full and fair opportunity to present evidence and the to testify, we **DENY** his due process claim. Because we lack jurisdiction to review discretionary decisions relating to waiver of admissibility, we **DISMISS** Sequiera's petition as to those claims.

11