[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10716

_____

Agency No. A077-997-838

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2010
JOHN LEY
CLERK

XUE TONG ZOU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 22, 2010)

Before BARKETT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Xue Tong Zou, a Chinese national, petitions for review of the final order of

the Board of Immigration Appeals ("BIA"), which affirmed the Immigration

Judge's ("IJ") denial of his claims for asylum and withholding of removal under

the Immigration and Nationality Act, 8 U.S.C. §1101 *et seq*., and relief under the

United Nations Convention Against Torture.  Both the Immigration Judge and Board of Immigration Appeals rejected Zou's application for asylum, based partly on a government expert's report concluding that Zou submitted fraudulent documents in support of his claim.

Zou claims that the government's handling of the case violated his due process rights under the Fifth Amendment.[1]  Specifically, Zou claims that the when the government refused to produce its expert as a witness despite a promise to do so, the hearing provided to him was fundamentally unfair.  We agree and remand the case with instruction that the government shall produce its expert as a witness.

## I.  BACKGROUND

Zou concedes that he illegally entered the United States in February 2002. In March 2002, the Department of Homeland Security issued a notice to appear, charging that Zou was subject to removal as an immigrant without valid entry documents.  In September 2002, Zou filed an application for asylum.  He claimed asylum eligibility based on fear of future persecution due to his resistance to China's family planning policies.

In his asylum application, Zou stated that he was born in 1973 and his wife, Xie Shou Jin, was born in 1975.  They first met in 1994 and began living together

---

[1] "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.

in 1995, but decided not to marry because they were below the minimum age. In October 1996, Jin gave birth to their child, who was adopted by a neighboring family in January 1997. In August 2001, Jin became pregnant for a second time. The couple sought and obtained a marriage certificate from the government and married in September of 2001. However, before they could register their completed marriage with the government, a neighbor informed the authorities that the couple had previously had a child.

Based on this information, Zou claims that Chinese family planning officials threatened to sterilize him if his wife did not have an abortion. Due to the threats, the couple went into hiding September 2001 and Zou fled China the following month. Zou's wife remained in hiding in China and gave birth to her second child in June 2002. Zou claims family planning officials discovered his wife in 2003 and forcibly sterilized her. Zou contends that if not granted asylum, he would be fined and forcibly sterilized upon his return to China.

In support of his application, Zou filed a copy of an October 2001 notice from the Chinese family planning officials finding that he violated family planning laws and was required to report for sterilization. Additionally, he filed copies of notices from 2002 and 2003 in which Chinese officials demanded that he and his wife report for a fine and sterilization. A 2003 operation certificate reported that Zou's wife had been sterilized and a letter from Zou's wife stated that the

3

sterilization was involuntary. A letter, which appears to be from Zou's mother, reported that in November 2003, family planning officials arrested Zou's parents for a second time because officials could not find him. Zou also filed (1) a 2003 notarial certificate stating that Zou and his wife married in September 2001;[2] (2) a 2002 birth certificate stating that a daughter was born to Zou and his wife; and (3) a birth certificate dated October 1996 stating that a son was born to Zou and his wife.

In response to Zou's petition for asylum, the government had Elaine Wooten, a forensic document examiner with the Department of Homeland Security, analyze the documents submitted by Zou. In her forensic document laboratory report, Wooten concluded, in relevant part, that (1) she could not authenticate the marriage certificate, (2) that the sterilization certificate was "unlikely genuine," and (3) both birth certificates were counterfeit. Wooten assigned a range of authenticity to the remaining documents, finding most to be indeterminable.

Zou hired Larry Ziegler, a former government forensic document examiner now in private practice, to counter Wooten's laboratory report. Ziegler examined the documents and assembled his own forensic document laboratory report.

_____

[2] The IJ noted that notarial certificates have limited value because China has a "fee for service" notarial system and these documents may be bought to reflect the purchaser's statements.

Ziegler found that the notarial marriage certificate was genuine. Ziegler also concluded that it could not be conclusively determined whether the birth and sterilization certificates were genuine and it was therefore improper to consider them counterfeit. Ziegler stated that proper procedure under laboratory policy would be to report that no determination could be made. Ziegler testified to his conclusions at Zou's initial hearing.

At the time Ms. Wooten's written report was admitted, Zou orally requested that Ms. Wooten be subpoenaed to testify and filed a motion accordingly. The government stated that a subpoena was unnecessary as Wooten would be made available at the hearing. The IJ accepted this promise and declined to issue a subpoena for Wooten.

A hearing on the merits of Zou's claims was held in four parts: June 2005, August 2005, December 2005 and finally, March 2006. Wooten was scheduled to testify at the August 2005 hearing, but was never called as a witness due to time constraints. The government recognized its failure to produce Wooten and promised that Wooten would be made available at a later date.

Despite Zou's objection, Wooten was not made available at the two subsequent hearings. When asked by the IJ when Wooten might be available, government counsel admitted in both instances that they had failed to contact her and request her appearance. In her ruling, the IJ noted Wooten's absence, but

5

found that Wooten's report referencing fraudulent documents, coupled with inconsistences in Zou's testimony were enough to find that Zou's story was not credible. The IJ's opinion states that she afforded "great weight" to Wooten's report in making her ruling. Relying partly on her determination that Zou was not a credible witness, the IJ denied Zou's petition for asylum.

The denial was affirmed by the BIA, which found that the IJ's credibility findings were not clearly erroneous. Zou then appealed the case to this court, which granted a motion to remand the case back to the BIA for consideration of Zou's due process argument. On its second review, the BIA again affirmed the decision of the IJ, holding that the failure of the government to produce its witness did not constitute a due process violation.

In its decision, the BIA adopted and incorporated by reference its previous decision regarding the merits of Zou's applications for relief. The BIA asserted that Zou was given the opportunity to call his expert witness to dispute the government's findings regarding the authenticity of the documents submitted. The BIA concluded that such an opportunity satisfies the government's burden of providing Zou a full and fair hearing in an immigration proceeding. As such, the BIA asserted that the government was not legally bound to produce Wooten, despite their promises to do so. Zou now seeks relief from the BIA's decision.

6

## II. SCOPE OF REVIEW

We review only the BIA's decision, except to the extent the BIA expressly adopted the IJ's reasoning. *See Lin v. U.S. Att'y Gen*. 555 F. 3d 1310, 1314 (11th Cir. 2009). We review legal conclusions *de novo*. *See id*. Credibility determinations and factual findings are reviewed under the substantial evidence test and are left undisturbed if "supported by reasonable, substantial, and probative evidence." *Id*.

Here, the BIA expressly adopted the IJ's findings, including her partial adverse credibility determination regarding Zou. The IJ determined that Zou "submitted documents that appeared to be fraudulent or counterfeit and that relates to his credibility . . . ." The BIA incorporated this determination in its second opinion, which is now under review. As such, the IJ's determination regarding the authenticity of the documents in question fall squarely before this court.

## III.  DISCUSSION

Aliens are entitled to due process of law in deportation hearings. *Ibrahim v. U.S. I.N.S.,* 821 F.2d 1547, 1550 (11th Cir. 1987). This due process requirement is satisfied only by a full and fair hearing. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 49-51, 70 S. Ct. 445, 453-54 (1950). In order to establish that they did not receive a full and fair hearing, "aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial

7

prejudice." *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1341-42 (11th Cir. 2003) (per curiam).

Zou contends that the government's failure to produce a promised witness deprived him of his right to a fair hearing. We agree. Zou timely requested a subpoena so that he could examine Wooten at his hearing. He did so both orally and in writing. The IJ declined to issue the subpoena based wholly upon the representation by the government that they would produce the witness. Zou was therefore left without immediate recourse when the government failed to follow through on its promise. The government simply cannot fail to live up to its promise and then reap benefits from that failure.[3]

Additionally, the failure was not a mere oversight. The record shows that after time ran long at the August 2005 hearing, government counsel failed to even contact Wooten to request her appearance at the December 2005 or March 2006 hearings. When questioned by the IJ at both hearings, government counsel admitted that they had not been in contact with Wooten and were unaware of her whereabouts. This repeated failure shows utter disregard for the promises made to Zou and the IJ.

---

[3] It is very disappointing to have a situation where the government's lawyer promises to produce a witness and then makes no effort to do so despite repeated opportunities followed by an argument before us that there was no obligation to do so. This type of playing "fast and loose" with the system is inconsistent with basic notions of due process and fairness.

The IJ decided to move forward without Wooten's testimony in an attempt to conclude the case without granting a continuance. While an IJ has considerable authority to regulate the course of the hearing, the Immigration and Nationality Act provides that an alien must be permitted a reasonable opportunity to cross-examine witnesses presented by the government. 8 U.S.C. § 1229a(b)(4)(B). While the statute on its face does not give an alien the right to cross-examine a witness not called by the government, courts have recognized that the statutory purposes behind the provision "would be frustrated if the government's choice whether to produce a witness or to use a hearsay statement [were] wholly unfettered." *Cunanan v. INS*, 856 F.2d 1373, 1375 (9th Cir. 1988).

The same reasoning applies in the instant case. The IJ's broad authority to regulate the course of the proceeding does not trump Zou's constitutional right to a fair hearing. The government created the duty to produce the witness by promising to do so. It is no answer to suggest that because the Federal Rules of Evidence do not control administrative proceedings, the government can conduct its affairs in this fashion. The due process clause of our Constitution requires basic fairness regardless of the forum.

The government's failure undercut Zou's opportunity to fully present his case. This denial was not harmless, as Zou was prohibited from cross-examining the witness whose report went to the heart of Zou's credibility and was ultimately

determinative of the case. Therefore, the errors asserted caused Zou substantial prejudice and denied him the opportunity for a fair hearing.

## IV. CONCLUSION

It is clear that the government's conduct deprived Zou of fair hearing, and as such, his due process rights were violated. Therefore, we remand the case to the BIA for remand to the IJ for a new hearing where the government produces its expert witness.[4]

REVERSED AND REMANDED.

---

[4] We indicate nothing as to the final outcome of this matter. Our ruling is that under the particular circumstances of this case, Zou must be given the right to cross examine the government's expert witness.

BARKETT, Circuit Judge, specially concurring:

I agree with the majority that the government's refusal to produce its expert witness, despite its promise to do so, violated Mr. Zou's Due Process rights such that reversal and remand for a new hearing is necessary. I would also note that this new hearing is a clean slate for Mr. Zou as well to present any evidence of his "other resistance," as provided for by Yu v. U.S. Att'y Gen., 568 F.3d 1328, 1330-31 (11th Cir. 2009), which was published after briefing was completed in this appeal.