[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11619
Non-Argument Calendar
_____

Agency No. A088-968-186


EDWIN GUSTAVO MOLINA-AVELAR,

                                                              Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                              Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 11, 2013)

Before MARTIN, JORDAN and FAY, Circuit Judges.

PER CURIAM:

Edwin Molina-Avelar, who is a native and citizen of El Salvador, seeks

review of the Board of Immigration Appeals' ("BIA") decision, affirming the

Immigration Judge's ("IJ") denial of his motion to reopen his removal proceedings under the Immigration and Nationality Act ("INA"). On appeal, he argues that the BIA and the IJ should have reopened his *in absentia* removal proceedings because he never received the initial notice to appear ("NTA") or notice of his November 2010 removal hearing. For the reasons set forth below, we deny the petition.

## I.

Molina-Avelar entered the United States on June 2, 2006, as a nonimmigrant, and upon the expiration of his visa, he remained in the United States without authorization. On October 23, 2008, the Department of Homeland Security ("DHS") issued Molina-Avelar a NTA for removal proceedings, and mailed it to 8353 Cedros Avenue in Panorama City, California (the "Cedros Ave. address"). The NTA notified Molina-Avelar that he must provide written notice to the DHS of his mailing address, and that he must immediately notify the DHS whenever his address changed by using a "Form EOIR-33." The NTA warned that, if Molina-Avelar failed to provide a current mailing address, the government would not be required to provide him with written notice of his removal hearing. Further, if he failed to attend the hearing, an IJ could issue a removal order in his absence.

An initial removal hearing was scheduled for December 17, 2008. The immigration court sent written notice of the hearing to Molina-Avelar at the

2

Cedros Ave. address, but it was returned undelivered.  On the date of the scheduled hearing, the IJ entered an order administratively closing the case.

In April 2010, the DHS filed a motion to recalendar Molina-Avelar's removal hearing and to change the venue to Florida.  In the motion, the DHS stated that Molina-Avelar had submitted a Form EOIR-33, dated November 8, 2008, which indicated that his address was "1393 SW 1ST 420A," Miami, Florida (the "Miami address").  In support, the DHS attached the Form EOIR-33, which was signed[1] and indicated that Molina-Avelar had moved from the Cedros Ave. address to the Miami address.

On June 28, 2010, the IJ granted the government's motion and ordered a change-of-venue to Miami.  On July 15, 2010, the Miami immigration court mailed a notice to Molina-Avelar at the Miami address that his removal hearing was scheduled for November 10, 2010.  Molina-Avelar failed to appear for the hearing, and the IJ ordered him removed to El Salvador *in absentia.*

Approximately one year after the removal hearing, in December 2011, Molina-Avelar, through counsel, filed a motion to reopen his removal proceedings and to rescind the *in absentia* removal order against him.  In the motion, Molina-Avelar indicated that he did not attend the removal hearing because he was unaware that he had been placed in removal proceedings.  He further indicated

---

[1] The printed name "Edwin Molina" appeared on the form, but the signature is illegible.

that, after entering the United States in 2006, he had lived "continuously" at 13036 Sherman Way in North Hollywood, California (the "Sherman Way address") with his wife, Nereida Martinez, and their child. Molina-Avelar believed that the removal proceedings had been initiated in Florida based on fraudulent conduct by a notary public. Specifically, a notary public had applied for Temporary Protected Status on Molina-Avelar's behalf, and the application indicated that Molina-Avelar lived "somewhere in [s]outh[] Florida." Molina-Avelar subsequently discovered the removal order when he was detained on unrelated charges.

In support of his motion, Molina-Avelar submitted an affidavit from his wife, Martinez, declaring that her husband had lived with her at the Sherman Way address since he came to the United States in 2006, and they never received notice of removal proceedings in Florida. She stated that Molina-Avelar was a victim of a fraudulent notary public who "preys on innocent and uninformed aliens." Molina-Avelar also submitted his and Martinez's marriage license, which was issued on April 25, 2007, and indicated that their address was 7457 Irvine Avenue in North Hollywood, California (the "Irvine Ave. address").

On December 29, 2011, the IJ issued a written decision, denying Molina-Avelar's motion to reopen. Specifically, the IJ found that Molina-Avelar's "unsupported contentions" did not justify the reopening of his removal proceedings. Contrary to his allegations, the record established that Molina-

Avelar, not a notary public, was responsible for the venue change to Miami because he signed a Form EOIR-33, which indicated that he had relocated from the Cedros Ave. address to the Miami address. Given these "undisputed facts," Molina-Avelar failed to provide support for his claim that a notary public was responsible for his failure to appear at the hearing. Further, Molina-Avelar clearly received the NTA because, after it was issued, he submitted the Form EOIR-33—a form that is only applicable to individuals in removal proceedings. Unless he was aware of the removal proceedings, Molina-Avelar would not have known to file such a form.

Further, the IJ found that, because Molina-Avelar had received the NTA, he was put on "actual notice" of the removal proceedings, including his obligation to notify the DHS of any changes in his address and the consequences of failing to do so. Thus, when the immigration court mailed notice of the November 2010 hearing to the Miami address, it complied with its obligation to attempt to deliver notice to the last address provided by Molina-Avelar. Additionally, Molina-Avelar's assertion that he had always lived at the Sherman Way address was contradicted by his marriage license, which provided a different California address. Regardless, he never notified the DHS of the Sherman Way address during his removal proceedings, and as such, the court had no obligation to provide him with "effective notice" of the November 2010 hearing. For these reasons, the IJ found

5

that Molina-Avelar could be charged with having received notice of his removal proceedings and his removal hearing, and as such, it denied his motion to reopen the proceedings.

Molina-Avelar appealed to the BIA, reasserting that he had no knowledge of the Form EOIR-33 that he "supposedly" signed, and that the venue for his removal proceedings was changed without his consent.

On February 28, 2012, the BIA dismissed the appeal, agreeing with the IJ that the DHS had served Molina-Avelar with the NTA by regular mail on October 23, 2008, at the Cedros Ave. address. Further, the BIA noted that DHS records indicated that Molina-Avelar had provided the Cedros Ave. address on his application for Temporary Protected Status. Moreover, the BIA found that the submission of a Form EOIR-33 to the DHS on November 8, 2008, with Molina-Avelar's name "strongly suggests" that he received the NTA. Additionally, evidence that a hearing notice was sent to the Cedros Ave. address in December 2008, but was returned as undeliverable, corroborated the Form EOIR-33's statement that Molina-Avelar had moved. As to his claim regarding the notary, the BIA noted that Molina-Avelar did not identify the notary, and he provided "very sketchy information" regarding his business relationship with the notary. Further, Molina-Avelar's assertion that a notary "may have provided a false address on his behalf" was unsupported by any credible evidence, and as such, the BIA would not

6

disturb the IJ's finding that he had received the NTA.  However, despite receiving notice of his obligation to provide the DHS with a current mailing address, he failed to do so, and as such, he was not entitled to written notice of his removal hearing.  Additionally, the IJ did not err in changing the venue for his removal proceedings to Miami because the change was based on information that Molina-Avelar lived in Miami, and no evidence suggested that he was prejudiced by the change of venue.  Accordingly, the BIA affirmed the IJ's denial of the motion to reopen and dismissed Molina-Avelar's appeal.

## II.

When the BIA issues its own opinion, we review only that decision, except to the extent that it expressly adopts the IJ's decision or reasoning.  *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009).  Here, because the BIA issued its own opinion, but explicitly adopted the IJ's reasoning and factual findings, we review both the BIA's and the IJ's decisions.  *See id*. (reviewing the IJ's decision to the extent that the BIA found that its reasoning was supported by the record).

We review the BIA's denial of a motion to reopen for an abuse of discretion. *Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1226 (11th Cir. 2008). Under the abuse of discretion standard, we are limited to determining whether an agency's exercise of discretion was "arbitrary or capricious."  *Id.* (quotation omitted).  The BIA's factual findings are considered "conclusive unless a

7

reasonable factfinder would be compelled to conclude to the contrary." *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1340 (11th Cir. 2003). In the context of a motion to reopen, whether an alien received sufficient notice of his removal hearing is a finding of fact. *See Contreras-Rodriguez v. U.S. Att'y Gen.*, 462 F.3d 1314, 1315, 1317 (11th Cir. 2006) (noting that it is not this Court's role to make factual findings regarding an alien's claim that he had not received notice of his removal hearing). To the extent that the BIA's decision was based on a legal determination, we review the decision *de novo*. *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006).

If an alien fails to attend a proceeding after being provided with written notice under INA § 239(a)(1) and (2), 8 U.S.C. § 1229(a)(1) and (2), he shall be ordered removed *in absentia* if the agency establishes by "clear, unequivocal, and convincing evidence" that the written notice was properly provided and that the alien is removable. INA § 240(b)(5)(A), 8 U.S.C. § 1229a(b)(5)(A). The INA recognizes that service by mail is a proper form of notice. *See* INA § 239(c), 8 U.S.C. § 1229(c). Further, the BIA presumes receipt of a notice of hearing sent by regular mail if "the notice was properly addressed and mailed according to normal office procedures." *Matter of M-R-A-*, 24 I. & N. Dec. 665, 673-74 (BIA 2008).

An alien bears an affirmative responsibility to keep the agency informed of his correct, current address. INA § 265(a), 8 U.S.C. § 1305(a); *Dominguez v. U.S.*

8

*Att'y Gen.*, 284 F.3d 1258, 1260 (11th Cir. 2002).  In fact, under 8 U.S.C.

§ 1229(a)(1)(F), an alien must immediately provide the government with an

address at which he may be contacted and must immediately provide notice of any

change of the alien's address.  INA § 239(a)(1)(F), 8 U.S.C. § 1229(a)(1)(F); *see*

*also Dominguez*, 284 F.3d at 1260.  Given this duty, "notice to the alien at the most

recent address provided by the alien is sufficient notice," justifying an *in absentia*

removal.  *Dominguez*, 284 F.3d at 1260.  By extension, an alien's failure to provide

agency officials with a current address precludes an alien from prevailing on a

claim that the immigration court did not properly serve him with a notice of a

removal hearing.  *Id.* at 1259-61 (denying petition for review of an alien who

alleged that she did not receive the notice of her hearing because it was undisputed

that notice was sent to her last known address).

The BIA did not abuse its discretion in affirming the IJ's denial of Molina-

Avelar's motion to reopen his *in absentia* removal proceedings.  The record

supported the BIA's and IJ's factual finding that Molina-Avelar had received the

NTA in 2008, which notified him of his obligation to notify immigration

authorities of his address.  Specifically, the NTA was issued on October 23, 2008,

and it indicated that Molina-Avelar should file a Form EOIR-33 to notify the DHS

if his address changed.  Approximately two weeks later, a Form EOIR-33 was

submitted to the DHS, indicating that Molina-Avelar had moved from the Cedros

9

Ave. address, where the NTA was sent, to the Miami address. Because the Form EOIR-33 was submitted shortly after the NTA was issued, it appeared that Molina-Avelar received the NTA, which referenced the form, and that he was aware of his obligation to notify the DHS whenever his address changed.

Although Molina-Avelar asserts that he hired a notary public, who fraudulently submitted the Form EOIR-33 without his knowledge or consent, Molina-Avelar did not identify the notary, explain why he hired a notary, or discuss how the notary was aware of his removal proceedings if he had not received the NTA. Other than his wife's affidavit, Molina-Avelar presented no evidence to support his claim that an unidentified notary forged his signature on the Form EOIR-33. Moreover, Martinez's affidavit was inconsistent with other evidence regarding where she and Molina-Avelar had lived in California, which undermined her credibility. Specifically, she claimed that Molina-Avelar had lived with her at the Sherman Way address since 2006, but their marriage license, which was issued in 2007, indicated that they lived at the Irvine Ave. address.

Regardless, even if Molina-Avelar had never lived in Florida, he appears to have been aware of his obligation to notify the DHS of his address as of October 2008, but he never provided notice that he lived at the Sherman Way address. Moreover, based on the signed Form EOIR-33 that the DHS received in November 2008, the Miami address was his address of record. As such, the immigration court

10

properly mailed written notice of the November 2010 removal hearing to the Miami address, which was Molina-Avelar's last known address.  *Dominguez*, 284 F.3d at 1260.  Because the immigration court provided sufficient notice to Molina-Avelar, and he failed to appear for the removal hearing, the IJ was permitted to order him removed *in absentia.  See id.*  Given Molina-Avelar's failure to comply with his duty to provide the DHS with his current address, the BIA did not abuse its discretion in denying his motion to reopen his removal proceedings.

For the foregoing reasons, we deny Molina-Avelar's petition for review.

**PETITION DENIED**.