[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15310
Non-Argument Calendar
_____

Agency No. A206-226-392

JOSE ANTONIO LAZO AVELAR,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 19, 2017)

Before HULL, WILSON, and MARTIN, Circuit Judges.

PER CURIAM:

Jose Antonio Lazo Avelar petitions this Court for review of the Board of Immigration Appeals's ("BIA") denial of his motion to reopen his removal proceedings. After careful consideration, we deny the petition for review.

I.

Avelar is a native and citizen of Honduras. In August 2013, he came to the United States without the documentation necessary to legally enter the country. The following month, the Department of Homeland Security served Avelar with a Notice to Appear that charged him with removability under the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I).

On September 15, 2014, an Immigration Judge held a removal hearing for Avelar. At the hearing, Avelar admitted he was not legally in the United States, but sought relief from removal under the Convention Against Torture ("CAT"). The CAT allows for the withholding of removal if an applicant can show "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

Avelar's CAT claim was based on his work as a police officer in Honduras and the fear of reprisals from gangs he helped prosecute. Avelar testified that in May 2013 he arrested two members of a Honduran gang. Relatives of the gang members then threatened to "disappear [Avelar] and [his] family" if he testified against them. Avelar said this was the only threat he ever received. And although

2

Avelar left Honduras in August 2013, his family stayed there. Avelar testified that no harm had come to them and there was "[n]o indication they've ever been found."

After hearing Avelar's testimony, the Immigration Judge denied Avelar's CAT claim and ordered him removed to Honduras. The BIA affirmed.

In April 2016, Avelar filed a motion to reopen his removal proceedings. Avelar argued he had new, previously unavailable evidence that proved he is eligible for CAT relief and merited reopening his case. Avelar submitted three main pieces of evidence. First, he attached a police report he filed with Honduran authorities in June 2013. In the report, Avelar said that on June 12, 2013—one month after he received the threat not to testify against the gang members—two hooded men followed him and shot at him, but Avelar was able to escape to safety. Second, Avelar submitted evidence that two fellow police officers who participated in the same May 2013 gang arrests were killed a year later by "[u]nknown assailants . . . while they were on patrol." Avelar said he did not learn of these killings until "early 2016." Third, Avelar presented evidence that in December 2015, "several unknown men" came to Avelar's mother's home looking for him. They asked where her "police trash" son was. When she said she did not know, the men forcibly entered the house and searched it. The men were masked and

3

armed, and told Avelar's mother they would return.  Avelar said he did not learn about this incident until February 2016.

The BIA denied Avelar's motion to reopen.  The BIA found that Avelar's evidence did not meet the standard for reopening because it did "not show that a different outcome [is] warranted."  Even with the additional evidence, the BIA said Avelar was not "prima facie eligible for protection under CAT."  Avelar now petitions for review in this Court.

## II.

We review for an abuse of discretion the BIA's denial of a motion to reopen.  Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1340 (11th Cir. 2003) (per curiam).  "This review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner."  Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009) (per curiam).  The BIA may grant a motion to reopen if the movant presents "new facts" that are "material and [were] not available and could not have been discovered or presented at the former hearing."  8 C.F.R. § 1003.2(c)(1).  Even if the movant succeeds in presenting newly-discovered, material evidence, the BIA may still deny the motion to reopen if the evidence "fail[s] to establish a prima facie case" for the relief sought.  Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001).

4

The relief Avelar seeks is CAT protection.  As mentioned before, to obtain CAT relief the movant must prove "it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2).

### III.

We cannot say the BIA abused its discretion in denying Avelar's motion to reopen his removal proceedings to seek CAT relief.  The BIA addressed each piece of evidence Avelar submitted with his motion.  For each, the BIA explained why the evidence is either not newly-discovered, not material, or not sufficient to show it more likely than not that Avelar will be tortured if he returns to Honduras.

First, the BIA discussed the incident in which unknown men shot at Avelar a month after the gang arrests.  As the BIA correctly observed, this is not a "new fact."  See 8 C.F.R. § 1003.2(c)(1).  The incident happened in June 2013 when Avelar was still in Honduras.  He could and should have mentioned it at the hearing before the Immigration Judge in September 2014.  Not only did Avelar omit the incident from his testimony, he also affirmatively said there were no "problems or [] threats" after the initial threat in May 2013.  The BIA was thus permitted to reject this evidence, as it was both not newly-discovered and "inconsistent with [Avelar's] previous testimony."

Next, the BIA addressed the killing of the two police officers who assisted in the gang arrests. Unlike the shooting incident, this evidence is newly-discovered because, as the BIA said, Avelar "only learned about their death[s] recently." Nevertheless, the BIA discounted the materiality of this new evidence. The BIA correctly found that Avelar had no information about who killed the officers or the motive behind the killings. Avelar merely "believe[s]" the officers "were killed for the same arrest that [he] was involved in." On this record, the BIA was within its discretion to find this evidence only minimally relevant to the question of whether Avelar is likely to face torture if he is removed to Honduras.

Finally, the BIA discussed the December 2015 incident in which masked men forced their way into Avelar's mother's home looking for him. The men were armed, were specifically looking for Avelar, referred to him as "police trash," and threatened to return. We have no doubt this incident is highly relevant to the CAT inquiry. Ultimately, however, the BIA found the evidence not sufficient to show that Avelar is "prima facie eligible for protection under CAT." If our review were de novo, we might disagree with this conclusion. But we cannot say it was an abuse of discretion. Lonyem, 352 F.3d at 1340. The BIA explained that Avelar failed to show "who these individuals were" and did not definitively prove their motive. The BIA also pointed out that these men have not returned since the December 2015 incident and Avelar's family has lived in Honduras unharmed. In

6

light of these facts, it was not an abuse of discretion for the BIA to find that Avelar

failed to meet the "heavy burden" of showing "it is more likely than not" that he

will be tortured if removed to Honduras.[1]  See Najjar, 257 F.3d at 1302–03;

8 C.F.R. § 208.16(c)(2).

**PETITION DENIED.**

---

[1] The BIA also declined to reopen under its sua sponte authority.  See 8 C.F.R. § 1003.2(a).  Avelar argues this was error.  But we do not have jurisdiction to review the BIA's exercise of its sua sponte authority.  Lenis v. U.S. Att'y Gen., 525 F.3d 1291, 1294 (11th Cir. 2008).