[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14951
Non-Argument Calendar
_____

Agency No. A094-794-172


MUNTA ZAMPALIGIDI-JEBREEL,

                                                              Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                              Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 8, 2013)

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Petitioner Munta Zampaligidi-Jebreel, a native and citizen of Ghana, proceeding *pro se*, seeks review of the order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal.  The following facts are relevant to his appeal.

Prior to his merits hearing, Zampaligidi-Jebreel requested a second change of venue from Atlanta, Georgia, to New York City, New York because he had relocated there.  DHS subsequently opposed the venue change for multiple reasons, including a prior venue change and a failure to provide a detailed explanation of the reasons for a transfer, with which the IJ agreed.

Moreover, Zampaligidi-Jebreel's case was continued several times in order to afford him an opportunity to find representation.  The IJ repeatedly advised him of his right to seek counsel and the applicable time constraints to do so if he wished, which he acknowledged that he understood.  After the IJ granted Zampaligidi-Jebreel's request to discharge his counsel on November 5, 2010, the IJ warned Zampaligidi-Jebreel that he was unlikely to grant a further continuance of his scheduled November 16, 2010, merits hearing for the purpose of allowing him to seek replacement counsel again.  Zampaligidi-Jebreel also did not request another continuance before or during his subsequent merits hearing.

2

At his merits hearing, Zampaligidi-Jebreel stated that he suffered past persecution when Mamprusi tribe members burned down his family home in 2001, and severely beat him on three occasions in 2001, 2007, and 2008, because he belonged to the Kusasi tribe.  He further asserted that he had a well-founded fear of future persecution because he believed that if he returned to Ghana, the Mamprusi would kill him because he was a Kusasi.  He also admitted that since 2001, he had been fighting and killing the Mamprusi, and burning their houses, in order to defend his Kusasi tribe.

At the conclusion of Zampaligidi-Jebreel's testimony before the IJ, the Department of Homeland Security ("DHS") moved to have his asylum application pretermitted based on preclusion, in accordance with the persecutor bar under 8 U.S.C. §§ 1101(a)(42)(B), 1158(b)(2)(A)(i).[1]  The IJ deferred his position as to whether Zampaligidi-Jebreel, as a matter of law, was ineligible for asylum based on the persecutor bar, and instead proceeded to address his application on the merits.

The IJ ultimately decided that because Zampaligidi-Jebreel did not establish past persecution, or demonstrate a well-founded fear of future persecution, he was not entitled to asylum or withholding of removal.  Zampaligidi-Jebreel

---

[1] This provision states that an alien is ineligible for both asylum and withholding of removal if "the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ."  8 U.S.C. § 1158(b)(2)(A)(i).

3

subsequently appealed to the BIA, arguing that substantial evidence supported his claims, in addition to asserting certain due process violations. The BIA affirmed the IJ's decision, concluding that Zampaligidi-Jebreel failed to show that he was entitled to asylum relief based on a well-founded fear of future persecution. The BIA further determined that Zampaligidi-Jebreel's due process arguments were without merit.

On appeal, Zampaligidi-Jebreel first argues that the IJ erred in finding that he was not credible based on past criminal activity because he qualified his involvement as one of an unwilling participant. Moreover, numerous occurrences led him to fear that he would be persecuted if he continued to live in Ghana, including his prior severe beatings and the destruction of his family home. Zampaligidi-Jebreel next asserts that the IJ violated his due process rights by compelling him to proceed *pro se*, refusing a second change of venue, and entering into the record a research report, submitted by the government, in violation of court rules.

We will address each point in turn.

### I.

We review the BIA's decision as the final judgment. *Ruiz v. Gonzalez*, 479 F.3d 762, 765 (11th Cir. 2007). However, when the BIA explicitly agrees with the findings of the IJ, we will review the decision of both the BIA and the IJ as to

those issues.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).

Because the BIA issued its own opinion in this case, we review the BIA's opinion.

*Ruiz*, 479 F.3d at 765.

We review an agency's findings of fact, including credibility determinations,

under the substantial evidence standard.  *Al Najjar v. Ashcroft*, 257 F.3d 1262,

1283–84 (11th Cir. 2001).  When the IJ makes an adverse credibility determination

and the BIA nonetheless assumes an applicant is credible, we will do the same.  *Shi

v. U.S. Att'y Gen.*, 707 F.3d 1231, 1234 (11th Cir. 2013).  These findings are

considered conclusive "unless a reasonable factfinder would be compelled to

conclude to the contrary."  *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1340 (11th

Cir. 2003); 8 U.S.C. § 1252(b)(4)(B).  Under this highly deferential standard, we

may not overturn the agency's factual determination unless we find that the record

supports the contrary conclusion and compels reversal.  *Fahim v. U.S. Att'y Gen.*,

278 F.3d 1216, 1218 (11th Cir. 2002).

An alien bears the burden of proof to establish his eligibility for asylum and

withholding of removal.  8 U.S.C. §§ 1158(b)(1)(B), 1231(b)(3)(C).  The alien

must show that he is a refugee, a person who is unable or unwilling to return to his

native country because of past persecution or a well-founded fear of future

persecution based on his "race, religion, nationality, membership in a particular

social group, or political opinion."  8 U.S.C. § 1101(a)(42).  If the alien

demonstrates that he was subject to past persecution, a rebuttable presumption arises that he has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). To independently establish a well-founded fear of persecution, an alien must show that such fear is both "subjectively genuine and objectively reasonable." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (quoting *Al Najjar*, 257 F.3d at 1289). Additionally, an application for asylum made in removal proceedings is also considered a request for withholding of removal. 8 C.F.R. § 1208.3(b). An alien who fails to satisfy the lower burden of proof required for asylum necessarily fails to satisfy the higher clear probability standard required for withholding of removal. 8 C.F.R. § 1208.16(b)(2); *Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 820–21 (11th Cir. 2007).

## II.

Substantial evidence supports the BIA's determination that Zampaligidi-Jebreel was not entitled to asylum and withholding of removal. As Zampaligidi-Jebreel testified, and as the 2008 and 2009 State Reports demonstrate, the harm he experienced and fears upon return to his native country derives from a conflict in Bawku that has been ongoing for a long period of time. During this conflict, members of both the *Mamprusi* and Kusasi tribes have been injured, and Zampaligidi-Jebreel has not shown how the harm he suffered as part of this conflict is different from the harm faced by the general population. The harm that

Ghana's internal tribal conflict poses is not specific to Zampaligidi-Jebreel, but rather, is widespread. *See Matter of Sanchez and Escobar*, 19 I. & N. Dec. 276, 288 (BIA 1985) (petitioners did not show that "any special individualize circumstances indicating that they had been or will be singled out for persecution beyond the general threat of harm affecting the entire population"); *cf. Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1328 (11th Cir. 2001) ("[T]he INA does not extend eligibility for asylum to anyone who fears the general danger that inevitably accompanies political ferment and factional strife." (internal quotation marks omitted)).

Zampaligidi-Jebreel also does not show that the harm he fears would be committed by either the government or by forces that the government is either unable or unwilling to control. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007) (petitioner must show that he is "unable to avail [himself] of the protection of [his] home country"). He testified that the police or security forces had never harmed or threatened him personally. Additionally, Zampaligidi-Jebreel's own testimony supports the BIA's conclusion that he might be arrested in Ghana for his involvement in unlawful and criminal activity, not because of his membership in the Kusasi tribe. Thus, we conclude that substantial evidence supports the BIA's determination that Zampaligidi-Jebreel is not entitled to asylum and withholding of removal. Accordingly, we decline to reverse the BIA's order.

III.

"We review constitutional challenges *de novo*." *Lonyem*, 352 F.3d at 1341. "To establish due process violations in removal proceedings, aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial prejudice." *Id.* at 1341–42; *see also Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1263 (11th Cir. 2003). In order to demonstrate substantial prejudice, an applicant must show that the outcome of his proceedings would have been different. *See Ibrahim v. U.S. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987).

Pursuant to the INA, "[i]n any removal proceedings before an immigration judge . . ., the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose." 8 U.S.C. § 1362. However, a waiver of the right to counsel need not always be express, and may be inferred from the language and acts of the defendant. *Cf. North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757 (1979); *Cobourne v. INS*, 779 F.2d 1564, 1566 (11th Cir. 1986).

With respect to venue, the IJ may change venue upon the request by a party, "after the charging document has been filed with the Immigration Court." 8 C.F.R. § 1003.20(b). "The [IJ] may grant a change of venue only after the other party has been given notice and an opportunity to respond to the motion to change venue."

8

*Id.*; *see Frech v. U.S. Att'y Gen.*, 491 F.3d 1277, 1282 n.9 (11th Cir. 2007).  Good cause is determined by balancing certain relevant factors, including administrative convenience, expeditious treatment of the case, location of witnesses, and the cost of transporting witnesses or evidence to a new location.  *Matter of Rahman*, 20 I. & N. Dec. 480, 482–83 (BIA 1992) (citations omitted).

Zampaligidi-Jebreel has failed to show that any of the IJ's purported procedural errors deprived him of the right to a fair and impartial hearing.  First, his case was continued several times in order to afford him an opportunity to find representation, and the IJ warned him on November 5, 2010, that another continuance would likely not be granted.  After discharging his counsel, Zampaligidi-Jebreel also did not request another continuance before or during his subsequent merits hearing on November 16, 2010, and instead, proceeded with the hearing.  *See Cobourne*, 779 F.2d at 1566.  Second, he failed to show that the IJ erred in denying his motion for a second change of venue.  The IJ acted within his discretion not to grant a second change of venue, after determining there was insufficient good cause to do so.  8 C.F.R. § 1003.20(b); *Matter of Rahman*, 20 I. & N. at 482–83.  However, even if the IJ had abused its discretion in failing to grant the request, we conclude from the record that Zampaligidi-Jebreel failed to establish that he was substantially prejudiced by the denial of the motion because he received a full and fair hearing in Atlanta, Georgia.  *Ibrahim*, 821 F.2d at 1550;

9

*see Frech*, 491 F.3d at 1282 n.9.[2]  Accordingly, we also deny his petition as to his

claim of a denial of due process.

   **PETITION DENIED.**

---

[2] Zampaligidi-Jebreel also asserts that the IJ abused its discretion by entering a DHS-submitted reported into the record in violation of court rules.  However, he offers no argument on this issue.  Thus, we deem the issue abandoned on appeal. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).